# H. HACKFELD AND COMPANY *v.* UNITED STATES.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

*No. 164. Argued March 6, 1905.—Decided April 3, 1905.*

Section 10 of the act of March 3, 1891, 26 Stat. 1084, which imposes upon one who has brought immigrants into the United States not permitted to land here, the duty of returning them to the place from whence they came, with a penalty in case the duty is neglected, is a highly penal statute and must be strictly construed; the word "neglect" cannot be construed so as to make the shipowner or master an insurer of the absolute return of the immigrant at all hazards, but it does require him to take every precaution to prevent the immigrant from escaping and holds him to the care and diligence required by the circumstances.

Where in an action under § 10 of the act of March 3, 1891, the Attorney General and the other party have stipulated the facts as to the escape of immigrants and that the escape did not occur by reason of any negligence or want of proper care on the part of the master or officers of the vessel, the court cannot regard the stipulation as to lack of negligence a mere conclusion of law and find that there was negligence on the evidentiary facts as stipulated. It will presume that the Attorney General has done his duty and not stipulated away any of the rights of the prosecution, and the defendant is entitled to have the case tried upon the assumption that the ultimate fact of lack of negligence stipulated into the record was established as well as the specific facts recited.

THIS case is here on writ of certiorari to the Circuit Court of Appeals for the Ninth Circuit, to review a judgment of that court, affirming a judgment of the District Court for the District of Hawaii, in which the petitioner, Hackfeld and Company, was adjudged guilty of a violation of section 10 of the act of March 3, 1891, 26 Stat. 1084, and to pay a fine of $600, for neglecting to return to the port from whence they came, Yokohama, Japan, two certain Japanese immigrants unlawfully in the United States, in violation of the act of Congress. The conviction was upon information filed and trial had to the court, a jury having been waived, and was upon a stipulated finding of facts, agreed upon by the attorney for the United States and the petitioner.  After statements as to the corporate character of the defendant company, and that it was the agent of the steamship Korea, a vessel plying between the State of California and the Empire of Japan, it is stipulated that the vessel brought into the port of San Francisco in the United States two certain Japanese immigrants from Yokohama, Japan, on October 28, 1902; that on the following day, October 29, 1902, the said Japanese were denied admission into the United States by the board of special inquiry at the port of San Francisco, and the said board, being duly appointed and authorized in the premises, ordered the deportation of the said Japanese immigrants.  That on the seventh day of November, 1902, the said Japanese were received on board the vessel Korea for transportation to Japan.  The stipulation then recites the following facts:

"That on the twelfth day of November, A. D. 1902, the said steamship Korea did arrive at the port of Honolulu, in the District and Territory of Hawaii; that at the time of the arrival of said steamship Korea at said port of Honolulu, the said immigrants were still on board of said vessel; that said Japanese immigrants, together with certain deported Chinese, were placed in a room on board said vessel and locked up by the steerage steward of said vessel; at 12 o'clock midnight of said twelfth day of November, A. D. 1902; said Japanese were still

on board said vessel in said room; that between that time and 5 o'clock on the morning of the thirteenth day of November, A. D. 1902, said Japanese had effected their escape; that the only method of egress was through portholes, which were nearly 25 feet above the water; that this method of escape could not have been reasonably anticipated by the master, or officers, or agents of said steamship Korea; that said escape did not occur by *vis major* or inevitable accident; and that said escape did not occur by reason of any negligence or lack of proper care on the part of the officers of the vessel or said defendant.

"That the said defendant made search for said escaped immigrants, but up to the present time has not apprehended the said immigrants, and said immigrants have not been returned to Japan."

From the conviction in the lower court upon these stipulated facts a writ of error was taken to the Circuit Court of Appeals for the Ninth Circuit. In that court, without passing upon the question whether the statute justified conviction without proof of negligence, it was held that the judgment of conviction should be affirmed because the facts recited left room for the inference that the petitioner was found guilty of negligence in putting the Japanese in the room without taking the necessary precautions against escape through the portholes. The stipulation that the escape did not occur by reason of negligence or lack of proper care on the part of the officers of the vessel it was held did not bind the court nor prevent it from placing upon the facts stipulated the construction which, in its judgment, they should properly receive. 125 Fed. Rep. 596, 60 C. C. A. 428.

*Mr. Maxwell Evarts* for petitioner:

The trial court was bound by the stipulation and the claim therein that the escape did not occur by reason of any negligence or lack of proper care on the part of the vessel or defendant. The stipulation met the requirements of the court.

*Raimond* v. *Terrebonne Parish,* 132 U. S. 192; *Wilson* v. *Merchants' L. & T. Co.,* 183 U. S. 121, 128. This court is bound by the stipulation as by a finding of the lower court. *Dooley* v. *Pease,* 88 Fed. Rep. 446; *S. C.,* 180 U. S. 126; *Supervisors* v. *Kennicolt,* 103 U. S. 554. The conviction cannot be sustained under the act in the absence of negligence. The act is highly penal and must be strictly construed. *United States* v. *Wiltberger,* 5 Wheat. 95.

*Warren* v. *United States,* 58 Fed. Rep. 559, is adverse to petitioner and was wrongly decided. See *United States* v. *Spruth,* 71 Fed. Rep. 678.

*Mr. Assistant Attorney General Robb* for the United States:

The recital in the stipulation as to absence of negligence was a conclusion of law and not of fact. Where the facts are undisputed, admitted, or conclusively proved, negligence is a question of law for the court. 21 Am. & Eng. Ency. Law, 506; *Grand Trunk Ry. Co.* v. *Ives,* 144 U. S. 408; *Elliott* v. *Chicago, Mil. & St. Paul Ry. Co.,* 150 U. S. 245; *Union Pac. Ry. Co.* v. *McDonald,* 152 U. S. 262; *So. Pac. Co.* v. *Pool,* 160 U. S. 438.

Assuming the recital as a fact such a stipulation is void against public policy. The transportation company was a custodian and comes under the rule that an officer who keeps a prisoner so negligently that he escapes is guilty of crime. Bishop Cr. Law., ed. 1865, § 392, §1056; 1 Russell on Crimes, 8th Am. ed., 420; *Smith* v. *Commonwealth,* 59 Pa. St. 325. Negligence was to be presumed. *Lumber Co.* v. *Bibb,* 139 California, 325; *Berkshire* v. *Railway Co.,* 28 Mo. App. 225; *Graves* v. *Alsap,* 1 Arizona, 274, 282; *Detroit* v. *Beckman,* 34 Michigan, 125; *Murphy* v. *People,* 3 Colorado, 147; *Attorney General* v. *Rice,* 64 Michigan, 385; *Jones* v. *Madison County,* 72 Mississippi, 777; *Holmes* v. *Johnston,* 59 Tennessee, 155; *Happel* v. *Brethauer,* 70 Illinois, 166. The admission of specific facts nullifies a reservation denying their legal effect. 20 Ency. Pl. & Prac., 661; *Haight* v. *Green,* 19 California, 113.

The defendant was properly adjudged guilty by the trial

court even if there was no evidence before the court upon which a finding of negligence could be based.

Section 10 formed a part of the immigration act of 1891. The Executive Department immediately took the position that the act demanded that transportation companies bringing immigrants whose admission the law prohibited were chargeable at all hazards with the responsibility of returning them to the ports which from they came. This was sustained by the courts. *Warren* v. *United States*, 58 Fed. Rep. 559. And see *United States* v. *Spruth*, 71 Fed. Rep. 678.

MR. JUSTICE DAY, after making the foregoing statement, delivered the opinion of the court.

The Circuit Court of Appeals disposed of this case upon the view that the judgment of conviction would have been warranted upon the evidentiary facts stipulated, and that the stipulation, in so far as it stated that the escape of the immigrants could not have been reasonably anticipated by the master or officers of the steamship, and did not occur by reason of any negligence or want of proper care upon their part, was the statement of a mere conclusion, not binding upon the court, and would not prevent it from rendering an independent judgment upon the facts stated. We cannot take this view of the case. It may be conceded that where the facts are all stated, the court cannot be concluded by a stipulation of the parties as to the legal conclusions to be drawn therefrom, but we know no rule of public policy which will prevent the United States Attorney from stipulating with the defendant in a case of this character as to the ultimate facts in the controversy. It is to be presumed that such an officer will do his duty to the Government and not stipulate away the rights of the prosecution. The question of negligence in a given case is not easily reduced to one of law and, as is the case here, its presence or absence is the ultimate question to be decided between the parties. Ordinarily, the issue of negligence is one of fact to be deter-

mined by the jury. This proposition has been so often adjudicated in this court that it is only necessary to refer to the cases in passing. It has been held that where there is no reasonable doubt as to the facts or the inference to be drawn from them, the question becomes one of law. Where the state of facts is such that reasonable minds may fairly differ upon the question as to whether there was negligence or not, its determination is a matter of fact for the jury to decide. *Grand Trunk Ry. Co.* v. *Ives*, 144 U. S. 408, 417; *Baltimore & Ohio R. R. Co.* v. *Griffith*, 159 U. S. 603, 611; *Texas & Pacific Ry. Co.* v. *Gentry*, 163 U. S. 353, 368; *Warner* v. *Baltimore & Ohio R. R. Co.*, 168 U. S. 339.

The evidentiary facts in the stipulation upon which this case was tried are not very fully set forth, and the Government and the defendant were content to stipulate that the method of escape through the portholes (assuming that it was by this means the immigrants escaped) could not have been reasonably anticipated by those in charge of the Korea, and that the escape did not occur by reason of any negligence or lack of proper care upon the part of the officers of the vessel or the defendant.

We think the parties were entitled to have this case tried upon the assumption that these ultimate facts, stipulated into the record, were established, no less than the specific facts recited.

We come then to the important question in this case, as to the construction of the statute under which the petitioner was convicted and fined. The conviction was under section 10 of the act of March 3, 1891, 26 Stat. 1084, which is as follows:

"SEC. 10. That all aliens who may unlawfully come to the United States shall, if practicable, be immediately sent back on the vessel by which they were brought in. The cost of their maintenance while on land, as well as the expense of the return of such aliens, shall be borne by the owner or owners of the vessel on which such aliens came; and if any master, agent, consignee, or owner of such vessel shall refuse to receive back

on board the vessel such aliens, or shall neglect to detain them thereon, or shall refuse or neglect to return them to the port from which they came, or to pay the cost of their maintenance while on land, such master, agent, consignee, or owner shall be deemed guilty of a misdemeanor, and shall be punished by a fine not less than three hundred dollars for each and every offense; and any such vessel shall not have clearance from any port of the United States while any such fine is unpaid."

The question is as to the effect of this requirement upon shipowners who have wrongfully brought aliens into this country, and who, having received them on board the vessel for the purpose of returning them to the place from whence they came, shall neglect to detain them thereon, or neglect to return them. In this case, the court found the defendants guilty as charged in the information in that they refused and neglected to return to the port from whence they came the two Japanese immigrants. It is the contention of the Government that this statute requires of persons, situated as were the defendants, the absolute duty of returning to the place from whence they came, immigrants unlawfully brought into the ports of the United States; and that the word "neglect" as used in this statute is equivalent to the word "fail" or "omit," and the return of the immigrants is required at all hazards, and the vessel owner will only be relieved when the default is the result of *vis major* or inevitable accident. This contention finds support in the case of *Warren* v. *United States*, 58 Fed. Rep. 559, decided in November, 1893, in the Circuit Court of Appeals for the First Circuit, in which section 10 of the act of March 3, 1891, was directly under consideration. We are cited to no other cases construing this section wherein it was directly involved, although in *United States* v. *Spruth*, 71 Fed. Rep. 678, a case in the District Court for the Eastern District of Pennsylvania, involving the eighth section of the same act, Judge Butler criticized the decision in the *Warren case*, and expressed doubts as to the construction therein given to the language of a criminal statute. The word "neglect"

as sometimes used, imports an absence of care or attention in the doing or omission of a given act, or it may be used in the sense of an omission or failure to perform some act. To "neglect" is not always synonymous with to "omit." Whether the use of the term is intended to express carelessness or lack of attention required by the circumstances, or to express merely a failure to do a given thing, depends upon the connection in which the term is used and the meaning intended to be expressed. These meanings find illustration in the lexical definition of the word, as well as the adjudicated cases in which it has been construed when applied to different subjects. In Webster's Dictionary the verb "neglect" is defined as meaning "not to attend to with due care or attention; to forbear one's duty in regard to; to suffer to pass unimproved, unheeded, undone." In the Standard Dictionary the word is defined as meaning "to fail to perform through carelessness." And in the Century Dictionary: "1. To treat carelessly or heedlessly; forbear to attend to or treat with respect; be remiss in attention to or duty toward; 2. To overlook or omit; disregard. 3. To omit to do or perform; let slip; leave undone; fail through heedlessness to do or in doing (something)."

As defined in the penal statutes of several of the States, the word "neglect" is said to import "a want of such attention to the nature or probable consequences of the act or omission as a prudent man ordinarily bestows in acting in his own concerns." Words and Phrases Judicially Defined, vol. 5, p. 4940.

While the term may be used as indicative of carelessness, it may also merely mean an omission or failure to do or perform a given act. This meaning finds illustration in the case of *Rosenplaenter* v. *Roessle*, 54 N. Y. 262, 266, in which a guest at a hotel who failed to deposit his valuables for safekeeping as required by the statute, was held to have "neglected" to deposit within the meaning of the law, for, having the opportunity so to do, he omitted to avail himself of this means of safekeeping. An illustration of the meaning of the term when indica-

tive of a want of care is found in *Watson* v. *Hall*, 46 Connecticut, 204, 206, in which case it was held that in a statute by which a grand juror is made subject to prosecution when he shall neglect to make reasonable complaint of a crime, the word "neglect" was construed to be used in the sense of omission from carelessness to do something that can be done and that ought to be done, and the grand juror was held not to have neglected the complaint when, after investigation, he had become convinced that the offense should not be prosecuted.

In which sense is the term used in this statute? This is a highly penal statute and we think the well known rule, as laid down by Mr. Chief Justice Marshall in the case of *United States* v. *Wiltberger*, 5 Wheat. 76, 95, is applicable here:

"The rule that penal laws are to be construed strictly is, perhaps, not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals; and on the plain principle that the power of punishment is vested in the legislative, not in the judicial department. It is the legislature, not the court, which is to define a crime, and ordain its punishment."

It is true that in the construction of penal statutes, as well as others, the object and purpose is to ascertain the correct meaning of the act with a view to carrying out the expressed intent of the legislature, and penal statutes are not to be construed so strictly as to defeat the obvious intention of the legislature. *United States* v. *Lacher*, 134 U. S. 624. We are to search for the true meaning of this statute, remembering that it undertakes to define an offense which is not to be broadened by judicial construction so as to include acts not intended by Congress. The statute imposes upon one who has brought immigrants into the United States not permitted to land here, the duty of returning them to the place from whence they came, with a penalty by fine in case the duty is neglected. If, by this requirement, it was intended to make the shipowner or master an insurer of the absolute return of the immigrant, at all hazards, except when excused by *vis major* or inevitable

accident, it would seem that Congress would have chosen terms more clearly indicative of such intention, and instead of using a word of uncertain meaning, would have affixed the penalty in cases wherein the owner or master *omitted* or *failed* to safely return the immigrant illegally brought here, or provided some punishment for the person who had so far complied with the terms of the statute as to receive the immigrant on board his vessel, but had permitted the escape, either with or without fault upon his part. Where the statute permits of a construction which does not require this absolute insurance of the return of the immigrant, but holds the shipowner to the care and diligence required by the circumstances, we do not feel inclined to adopt the construction least favorable to the accused. This statute imports a duty, and in the absence of a requirement that it shall be performed at all hazards, we think no more ought to be required than a faithful and careful effort to carry out the duty imposed.

It is urged by the Government that in view of the reënactment of section 10 as section 19 of the act of 1903, 32 Stat. 1213, it is to receive a construction in harmony with the judicial interpretation given to the act before the revision. While recognizing the rule that doubtful terms which have acquired through judicial interpretation a well understood legislative meaning are presumed to be used by the legislature in the sense determined by authoritative decisions, *The Abbotsford*, 98 U. S. 440, we do not think the rule applies to this case. So far as we know, there has been but one decision, in the *Warren case, supra*, which was doubted in the *Spruth case, supra*. In 1900 the construction of this act was under consideration by the Attorney General of the United States upon a question submitted by the Secretary of the Treasury involving the remission of fines to which the owner or master of a vessel was supposed to be liable under the terms of the act now under consideration. In construing section 10 of the act the Attorney General said:

"But while I assume nothing relative to the facts in this

case, with which it is your duty to deal and not mine, I am clearly of the opinion that in a case where every precaution to detain in safe custody and prevent escape has been rigidly taken, and yet in some real and unforeseen emergency an escape has occurred, there is no such neglect as the act contemplates. If the question were regarded otherwise, the act would rather have said.'if any such alien *shall escape* from such vessel, such master shall be deemed guilty of a misdemeanor, and shall be punished.'" Opinions of Attorneys General, v. 23, p. 277.

In this state of judicial and official opinion we do not think this act can be said to have received such judicial interpretation as should control its legislative meaning. We think the Attorney General, in the case cited, laid down the true rule, which does not make the shipowner the insurer at all hazards of the safe return of the immigrant, but does require every precaution to detain him and prevent his escape.

It is further urged by the Government that if the burden of proof in cases under this act is placed upon the prosecution, it will be impossible to convict, as the facts and circumstances under which the escape took place are within the knowledge of the defendants alone. We are not dealing with the question of burden of proof in this case, for here it is expressly stipulated that the defendants could not have anticipated the escape by the method employed and were not guilty of any want of care in the premises. Undoubtedly, the act of Congress should be given a reasonable interpretation, with a view to effect its purpose to prevent the introduction into this country of classes of persons excluded by the immigration laws. If this act should be construed as requiring the return at all hazards of the immigrants, those who are required to perform its mandate will doubtless claim the right to use all the force necessary to avoid the penalty of the law in delivering the immigrant to the country or place from whence he came. What would be the result of such power, it is easy to imagine. It is difficult to see how a shipowner could insure the return of such immigrants

without such confinement or imprisonment as may result in great hardship to that class of individuals who may themselves have had no intention to violate any law of this country. We think this statute was intended to secure, not the delivery of the immigrant, at all hazards, but to require good faith and full diligence to carry him back to the port from whence he came. It follows that the judgment of the Circuit Court of Appeals must be reversed and the cause remanded to the District Court with instructions to discharge the petitioner.