## H. HACKFELD & CO., Limited, v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. October 2, 1905.)

### No. 1,004.

1. WRIT OF ERROR—DESIGNATION OF PARTIES.

That a writ of error designates the parties as plaintiff and defendant, following the title of the cause in the court below, is not a fatal error, but merely a clerical mistake, which does not affect the right to prosecute the proceedings for review.

2. ALIENS—DUTIES AND LIABILITIES OF SHIPOWNERS—ESCAPE OF IMMIGRANTS FROM INSPECTION OFFICERS.

The duty imposed on the owners, masters, and agents of ships bringing alien immigrants to a port of the United States by Act March 3, 1891, c. 551, §§ 8, 10, 26 Stat. 1085, 1086 [U. S. Comp. St. 1901, pp. 1298, 1299], to "adopt due precautions to prevent the landing of any alien immigrant at any place or time other than that designated by the inspection officers," and to detain such immigrants as may be rejected on board until they are returned, does not make a shipowner, master, or agent an insurer of the safe-keeping of alien immigrants while detained for inspection in the custody of inspection officers at a place on land designated by such officers, and they cannot be convicted of a violation of such provisions, because of the escape of immigrants while so held without their fault or negligence.

In Error to the District Court of the United States for the District of Hawaii.

J. E. Foulds and Kinney, McClanahan & Bigelow, for plaintiff in error.

Robert W. Breckens, U. S. Atty. (Edward E. Cushman, Sp. Asst. Atty. Gen., of counsel), for the United States.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge. The writ of error in this case is taken from judgments of convictions in 12 separate criminal informations, filed by the United States district attorney in the United States District Court for the District of Hawaii, which were all consolidated for the purpose of trial.

Each information contained two counts—the first alleging, in proper form, that on the 21st day of December, 1902, the defendant (plaintiff in error in this court), as agent of the steamship Coptic, did negligently permit to be landed a certain named alien Japanese immigrant, contrary to the provisions of section 8 of the Act of Congress of March 3, 1891, entitled "An act in amendment to the various acts relative to immigration and the importation of aliens under contract or agreement to perform labor" (26 Stat. 1085, c. 551 [U. S. Comp. St. 1901, p. 1298]); and the second count alleging that defendant, on the same date, did neglect to detain on said vessel the same named alien immigrant, contrary to the provisions of section 10 of the same act. Verdicts of guilty were rendered by the jury upon both counts in each information, and in each case judgment was rendered by the court against defendant for $100 on the first count and $300 on the second count.

The defendant in error moves the court to dismiss the writ of error because the parties in the writ are described as the "United States of America, plaintiff, and H. Hackfeld Co., Ltd., a corporation, defendant, and neither of them designated as plaintiff in error or defendant." The names of the parties were given under the title of the court below, and the failure to designate them as the title appears in this court is not a fatal error; at most, it would be a mere clerical mistake. The point made is too technical to merit serious consideration.

A motion to strike out certain portions of the testimony is subject to the same suggestion. If the motion to strike out were granted, it would not affect the result, because the bill of exceptions contains the essential points necessary to determine whether certain rulings made by the court were correct or not. The record is a very lengthy one, and it is wholly unnecessary to give more than a brief synopsis of the facts.

Section 8 of the act under consideration provides:

"That upon the arrival by water at any place within the United States of any alien immigrants it shall be the duty of the commanding officer and the agents of the steam or sailing vessel by which they came to report the name, nationality, last residence, and destination of every such alien, before any of them are landed, to the proper inspection officers, who shall thereupon go or send competent assistants on board such vessel and there inspect all such aliens, or the inspection officers may order a temporary removal of such aliens for examination at a designated time and place, and then and there detain them until a thorough inspection is made. But such removal shall not be considered a landing during the pendency of such examination. * * * During such inspection after temporary removal the superintendent shall cause such aliens to be properly housed, fed, and cared for, and also, in his discretion, such as are delayed in proceeding to their destination after inspection. * * * It shall be the duty of the aforesaid officers and agents of such vessel to adopt due precautions to prevent the landing of any alien immigrant at any place or time other than that designated by the inspection officers, and any such officer or agent or person in charge of such vessel who shall either knowingly or negligently land or permit to land any alien immigrant at any place or time other than that designated by the inspection officers shall be deemed guilty of a misdemeanor."

The plaintiff in error was the agent of the steamship Coptic. The immigrants in question arrived upon said steamship at Honolulu from the Orient December 18, 1902. The record shows that they were conveyed from the steamship to Quarantine Island for inspection by surgeons of the marine hospital service, acting under orders from the immigration department. It also appears that subsequent to the medical examination and the finding of a report adverse to the immigrants, but prior to the examination and order of deportation made by the immigration inspectors, the immigrants escaped from Quarantine Island. Two days after the escapes were made, the immigration inspector issued his order, refusing the immigrants in question, with about 40 others who had not escaped, a landing.

The following letter was admitted in evidence:

"Immigration Service, Port of Honolulu, T. H., January 14th, 1902.
"Dr. L. E. Cofer, Chief Quarantine Office, Honolulu, T. H.—Sir: In view of the number of Asiatic immigrants, arriving at this port, on every ship from the Orient, we find it utterly impossible with the limited force of this office, to make proper inspection of such immigrants, as is required by the immigration laws, during the time these ships usually remain in port, and

that the most convenient and practicable plan of handling them is to simply check off all arriving steerage passengers, and send them, for subsequent examination, to some place of detention. As is well known to you, and I believe by the Treasury Department also, the steamship companies bringing these people here have no place of detention at all suited for such large numbers; their only provision being for the detention of such as may be held after inspection, seldom exceeding five or six at a time. I am obliged, therefore, to ask that we be permitted to continue sending such immigrants to Quarantine Island, where they can be properly detained until the inspection is completed.

"Respectfully,    Joshua K. Brown, Immigration Inspector."
   *        *      *        *         *        *        *

"Q. After this the inspection of immigrants continued at Quarantine Island?

"A. Continued as before; never ceased in fact."

The record shows that the immigrants who were taken to the island for inspection were placed under guards selected and controlled by the officers of the government. The wages of the guards, and the cost of their maintenance and of the immigrants, were paid by the steamship company, as is required by section 10. It will be noticed that the escape occurred while the immigrants were in the custody of the inspection officers, after the removal from the steamship at a point and place that was designated by the inspection officer for the purpose of examination, and were there detained by the inspection officers, and were under their control at the time of the escape.

It was not shown that the plaintiff in error did not "adopt due precautions to prevent the landing of any alien immigrant at any place or time other than that designated by the inspection officers." The steamship company could not be held guilty, unless it be the law, as the court below virtually held, that it was an insurer of the safety of the immigrants while detained in the custody of the inspection officers of the government. We do not think that section 8 of the act is susceptible of any such construction.

At the close of the testimony the court instructed the jury as follows:

"In relation to the first count of these informations, I instruct you that from the time of the entrance of the steamer Coptic into the harbor of Honolulu, upon the date mentioned in the said informations, until the final completion of the examination of these alien immigrants by the proper inspection officers, the custody of such immigrants remained in the ship, notwithstanding that they may have been removed from the ship for the purposes of such inspection. In the language of the statute, this 'temporary removal shall not be considered a landing pending such examination.' It is done, as was shown in these cases, for the convenience of the shipping people, and to prevent any delay in the completion of the voyage of such vessel at its terminal point in California. For the purposes of the act itself, these immigrants are treated as being still on board the vessel, and, until they are declared to be lawfully entitled to enter the United States, the responsibility for their safekeeping was and is with the ship or its agent, under the provisions of the law. They cannot be relieved from this responsibility by claiming or proving that any officer or any employé of the United States may have assumed to look after them. * * * I instruct you further that you cannot consider any attempt on the part of the defendant to prove due care on its part or the fact that due care was exercised to prevent the escape of any of these immigrants. Under the provisions of the act of Congress upon which these informations are based, this is no excuse. The steamship company and its agent took the risk, when these Japanese immigrants were brought here, that they might be among the prohibited classes

and that they might escape and enter the country unlawfully. Nothing will excuse the steamship company or its agent, the defendant in this case, but what is known in the law as vis major (overwhelming force) or inevitable accident, and neither of these things has been shown in these cases."

The same general principles were again emphasized in the instructions given with reference to the second count of the indictment under section 10, closing:

"I therefore instruct you that, if the defendant in these cases has not proven to your satisfaction that these immigrants were returned to the port whence they came, although notified of their rejection by the proper inspection officers, then your verdict should be guilty under the second count of these informations."

The theory of the court in giving the instructions, as well as its rulings during the trial, as shown by the bill of exceptions, was based upon the principles announced by Judge Webb in Warren v. United States, 58 Fed. 559, 7 C. C. A. 368, which case has been expressly overruled by the recent decision of the Supreme Court in H. Hackfeld & Company v. United States, 197 U. S. 442, 451, 25 Sup. Ct. 456, 459, 49 L. Ed. 826. In construing the provisions of the act under consideration, the court said:

"This statute imports a duty, and, in the absence of a requirement that it shall be performed at all hazards, we think no more ought to be required than a faithful and careful effort to carry out the duty imposed."

That decision shows clearly that the court erred in following the Warren Case, and in charging the jury as above stated.

Upon the authority of Hackfeld v. United States, supra, the judgment of the District Court is reversed, and the court below instructed to discharge the plaintiff in error.