# IN THE MATTER OF JULIUS GARFFER.

### APPLICATION FOR NATURALIZATION.

Naturalization—First Papers—Final Papers.

1. No matter when first papers were taken out, all applications for final papers must be made within seven years after the taking effect of the Act of 1916. Re Yunghauss, 210 Fed. 545.

Construction of Statutes—Intention of the Legislature.

2. All laws should receive a sensible construction, and, however broad the language of a statute, an act which is within the letter but not within the intention of the legislature cannot be held to be within the statute.

Naturalization—Act of March 2, 1917—Remedial—Re Yunghauss, supra, Distinguished.

3. A foreigner who took out his first papers in New York in 1905 and then came to Porto Rico, where there was no court with jurisdiction of naturalization matters, will be granted his final papers under the Act of March 2, 1917, which is remedial in its general intent. The facts in this case are different from those in Re Yunghauss, supra.

Opinion filed April 5, 1917.

*Mr. O. M. Wood* for petitioner.

In the Matter of Garffer.

*Messrs. Raymond F. Crist,* Deputy Commissioner of Naturalization, and *Miles M. Martin,* District Attorney, for the government.

HAMILTON, Judge, delivered the following opinion:

The petitioner shows that he is a Russian, emigrating to the United States in 1902, and duly declared his intention to become an American citizen December 12, 1905, in the supreme court of New York, first judicial circuit. He complies with the requirements of law as to belief, residence, and the like, and annexes affidavit and the New York certificate above mentioned. The government raises the question whether this court is in the premises bound by the decision of the circuit court of appeals of this first circuit May 26, 1915, in Harmon v. United States, 139 C. C. A. 19, 223 Fed. 425, per Putnam, Circuit Judge. That case arose in Boston, and so far as the facts can be made out related to a man who had taken out his first papers under the law and prior to the Act of 1906, and then without any apparent grounds for delay had made his application for final papers more than seven years after the taking effect of the new Naturalization Act of September 27, 1906. Judge Morton followed Re Yunghauss, 210 Fed. 545, and 134 C. C. A. 67, 218 Fed. 168, which were adverse to a similar application. The Yunghauss decision was by the circuit court of appeals of the second circuit, the only one which apparently had discussed the point. The circuit court of appeals for the first circuit followed this decision of the second circuit, largely as a matter of comity, there being no full discussion of the question in the opinion.

1. The construction of the law in the Yunghauss Case was

IX. Porto Rico.—35.

### In the Matter of Garffer.

that all applications for final papers, no matter when first papers were taken out, must be made within seven years after the taking effect of the Act of 1906, as this would place all applicants, whether under the old or new law, on an equality.

2. There is no question that all laws should receive a sensible construction, and the reason should prevail over its letter. United States v. Kirby, 7 Wall. 482, 19 L. ed. 278. Where a statute imports a duty, and there is no intimation that it shall be performed at all hazards, under those circumstances a faithful and careful effort to carry out the duty is what is required. H. Hackfeld & Co. v. United States, 197 U. S. 442, 49 L. ed. 826, 25 Sup. Ct. Rep. 456. However broad the language of a statute, an act which is within the letter but not within the intention of the legislature cannot be held to be within the statute. Church of the Holy Trinity v. United States, 143 U. S. 457, 36 L. ed. 226, 12 Sup. Ct. Rep. 511. The law does not require an impossibility. The Casco, 2 Ware, 188, Fed. Cas. No. 2,486.

3. Garffer is shown to be a good man and a valuable citizen, who would long since have taken out his final papers if it had been possible under the law. He could not take them out here in Porto Rico because no court had jurisdiction to grant them. He could not take them out in New York because he was not residing in New York or within the United States for the purposes within the intent of the law. Now, however, the act approved March 2, 1917, declares that residents in Porto Rico shall, for naturalization purposes, be considered the same as residents elsewhere in the United States, which for naturalization purposes, therefore, amounts to an incorporation of Porto Rico in the United States. The only question would be whether this declaration relates back. There had long been a complaint

that people living in Porto Rico, otherwise good men and eligible to become Americans, were prevented from becoming citizens. They were neither flesh, fish, nor fowl. The Act of March 2, 1917, was designed to end a long delay as to making the Porto Ricans into American citizens, and must be construed as remedial in its general intent. It will be liberally construed to advance the purpose and the remedy necessary, and it is therefore held that the provision as to residence in Porto Rico for purposes of naturalization extends to residence previous to the act. The petitioner's application should be granted, and he be allowed to take the necessary steps towards completing his citizenship. It might be added that in his case there is no shadow connected with his application. His former country, Russia, is not and so far as can be seen cannot in any way get into hostilities with the United States and so make him an alien enemy.

The question is presented whether the law requires an impossibility, whether this provision which has been called a Statute of Limitations, applies. Re Wehrli, 157 Fed. 938. There is no express provision of the law on the subject, but it would seem to be a principle of general construction that the time cannot be counted against the applicant when the law did not permit him to perform any of the requirements during the time. It seems to the court that it is analogous to the principle of absence from the country which in certain cases stops the running of the Statute of Limitations. The point is not without difficulty, but the court thinks it should be solved in favor of the applicant who makes the application in good faith and proposes to establish proper proof.

It follows, therefore, that the case of Garffer is different in its facts from that of Yunghauss and that of Harmon. A con-

In the Matter of Garffer.

struction of the Naturalization Law of 1906, which would say that Garffer should have taken out his final papers within seven years after the taking effect of the Act of 1906, would not be putting him upon an equality with other applicants, because it would be requiring of him an impossibility. His application, therefore, will be received, a day set for hearing, and final proof made, permitted in accordance with the usual practice.

It is so ordered.