**FILED**
**FEB. 20, 2014**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 30439-6-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ANGEL A. FREGOSO-GUERRERO, | ) | |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, A.C.J. — After the trial court entered findings and conclusions on an accomplice's suppression motion, Angel Fregoso-Guerrero stipulated to those findings and conclusions for purposes of his own suppression motion, which was denied. He argues on appeal that the stipulation to findings from a hearing he did not attend violated his right to be present at all critical stages of the proceedings, that no evidence was presented in the hearing on his own suppression motion, and that the court's findings do not support a conclusion that his detention was lawful. The parties' arguments on these issues reveal a probable misunderstanding on everyone's part about the extent and effect of the parties' stipulation.

Supplementally, and with our leave, Mr. Fregoso-Guerrero demonstrates that he never validly waived his right to trial by jury. A new trial will therefore be required.

Because a new trial is required, and in light of what we perceive to be a genuine misunderstanding over the extent and effect of the stipulation to facts and conclusions from another defendant's suppression hearing, we grant Mr. Fregoso-Guerrero's request for a new hearing on his suppression motion.

We reverse and remand for proceedings consistent with this opinion.

## FACTS AND PROCEDURAL BACKGROUND

The State charged Mr. Fregoso-Guerrero and Enrique Retana Gonzalez with second degree burglary and second degree theft after sheriff's Deputy Lee Risdon found a stolen boat motor in the men's sport utility vehicle (SUV). Both men filed CrR 3.6 motions to suppress. The court ruled on Mr. Retana Gonzalez's motion first, and denied it.

At the hearing on Mr. Fregoso-Guerrero's motion, the State and Mr. Fregoso-Guerrero agreed to adopt the findings and conclusions from Mr. Retana Gonzalez's hearing. An interpreter read the findings and conclusions to Mr. Fregoso-Guerrero and he signed a copy of them.

The trial court's key findings at Mr. Retana Gonzalez's suppression hearing supporting Deputy Risdon's decision to pull over the SUV were of specific facts leading the deputy to "suspect[ ] the driver[, Retana Gonzalez,] might be under the influence of

2

alcohol based on the erratic driving and the location of the vehicle having been parked

along the fog line facing the wrong direction." Clerk's Papers (CP) at 28 (Finding of

Fact 10).[1]

The trial court's conclusions of law based on its findings addressed only "the

suspect," meaning Mr. Retana Gonzalez. It concluded:

---

[1] The following findings provided support for the deputy's suspicion that Mr. Retana Gonzalez was impaired:

1.      . . . [A]t approximately 1:10 a.m., Deputy Risdon was traveling . . . on [Highway] 97A.

2.      Deputy Risdon observed a vehicle's brake lights illuminate in the area of 405 Ohme Road near . . . Ohme Road Storage. There were no residences in the area and the businesses were closed.

. . . .

4.      Deputy Risdon stopped . . . some distance from the vehicle and activated his spotlight onto the vehicle.

5.      Deputy Risdon observed the front passenger door partially open and a Hispanic male starting to get out. He then observed the brake lights of the vehicle illuminate.

6.      As the male started to exit the vehicle, he looked back at Deputy Risdon. [I]t seemed suspicious to Deputy Risdon who then placed his vehicle in reverse and backed away in case the male . . . had a weapon.

7.      As soon as Deputy Risdon started to back his patrol vehicle up, the male passenger quickly got back inside the vehicle and shut the door.

8.      The vehicle then quickly accelerated . . . and abruptly swerved up onto the pavement.

9.      Deputy Risdon immediately accelerated behind the vehicle and activated his emergency lights.

. . . .

11.      The vehicle continued west . . . for a short distance and then came to an immediate stop.

CP at 27-28.

3

1.      The court finds the initial interference with *the suspect's* freedom of movement was justified at its inception. Here, Deputy Risdon's initial contact with the vehicle consisted of the use of his spotlight simply to illuminate the vehicle. There was no interference with *the suspect's* freedom of movement at that point.

2.      When the vehicle and its occupants, acting in a suspicious manner, rapidly accelerated and drove in an erratic manner across the roadway and down Ohme Road, Deputy Risdon possessed reasonable suspicion to stop the vehicle.

3.      The court concludes that a traffic stop on this vehicle was a reasonable interference with *the suspect's* freedom of movement. The vehicle was stopped in the middle of the road with the motor running and the keys in the ignition. The occupants, including the driver, fled the vehicle *and it was reasonable for the deputy to make contact with the driver to find out at that point whether the driver was under the influence of intoxicants or exactly what was going on in this situation.*

4.      The court further concludes that based on the totality of the circumstances, the deputy's interference with *the suspect's* freedom of movement was reasonably related in scope to the circumstances which justified the interference in the first place. The court considered the deputy's training and experience, the deputy being a 5-year veteran of the Chelan County Sheriff's Office, the location of the stop, the time of the stop (1:10 a.m.), the conduct of *the suspect* which included his attempted flight, and the erratic driving of the vehicle by *the suspect/defendant* in determining that reasonable suspicion existed for a detention of the driver.

CP at 30-31 (emphasis added). The court made additional findings in support of the deputy detaining Mr. Retana Gonzalez following the stop, including that he smelled strongly of intoxicants and had bloodshot eyes.

Deputy Risdon had actually chased and captured Mr. Fregoso-Guerrero first, however. The trial court's findings relating to Mr. Fregoso-Guerrero were that after Mr. Retana Gonzalez stopped in the middle of the roadway "[t]hree individuals fled from the vehicle" and Deputy Risdon "caught the driver's side passenger . . . . He was later

4

identified as Angel A. Fregoso-Guerrero." CP at 28-29. The officer also later discovered

what appeared to be a stolen boat motor in plain view from outside the SUV, but that was

after he had already chased, captured, and handcuffed Mr. Fregoso-Guerrero.

Having considered the parties' stipulation to the facts and conclusions, the trial

court accepted them and ruled that Deputy Risdon had lawfully seized Mr. Fregoso-

Guerrero.

Following the ruling, the prosecutor informed the court that "the second portion of

our hearing this morning . . . is actually to do a stipulated facts trial on this case." Report

of Proceedings (RP) at 3. The stipulated facts trial consisted in its entirety of the State

offering police reports into evidence without objection and the trial court, on the basis of

the police reports, finding Mr. Fregoso-Guerrero guilty and sentencing him.

Mr. Fregoso-Guerrero appeals.

## ANALYSIS

Mr. Fregoso-Guerrero raises four issues: that (1) the trial court's reliance on the

facts and conclusions from Mr. Retana Gonzalez's suppression hearing violated his right

to be present at all critical stages of the proceeding, (2) there was no evidence in the

record of Mr. Fregoso-Guerrero's case sufficient to sustain the findings, (3) the stipulated

findings do not demonstrate reasonable suspicion for chasing and seizing Mr. Fregoso-

Guerrero after he fled the SUV, and (4) there is no evidence of a knowing and voluntary

waiver by Mr. Fregoso-Guerrero of his right to a jury trial. We first address Mr. Fregoso-

No. 30439-6-III
*State v. Fregoso-Guerrero*

Guerrero's argument that he did not validly waive his right to a jury trial. We then

consider, collectively, the issues relating to the hearing on his motion to suppress.

I. *Does the record demonstrate a knowing and voluntary*
*waiver of the right to a jury trial?*

Mr. Fregoso-Guerrero argues that there is an insufficient showing that he

voluntarily and knowingly waived his right to a jury trial.

The federal and state constitutions both guarantee the right to a jury trial. U.S.

CONST. amend VI; CONST. art. I, § 21. The right may be waived, but it must be done so

voluntarily, knowingly, and intelligently. *City of Bellevue v. Acrey*, 103 Wn.2d 203, 207,

691 P.2d 957 (1984). The State has the burden to demonstrate that the waiver is valid.

*State v. Wicke*, 91 Wn.2d 638, 645, 591 P.2d 452 (1979). If the record is insufficient to

demonstrate that the waiver was valid, the court will make every reasonable presumption

against validity. *Id.* Whether the waiver is valid is an issue of law that we review de

novo. *State v. Ramirez-Dominguez*, 140 Wn. App. 233, 239, 165 P.3d 391 (2007).

The record is sufficient to demonstrate a valid waiver only if it shows that the

defendant personally waived the right. *State v. Hos*, 154 Wn. App. 238, 250, 225 P.3d

389 (2010) (citing *Wicke*, 91 Wn.2d at 644). Although CrR 6.1 requires a written waiver,

a record showing that the defendant orally waived the right may be sufficient to prove a

valid waiver for constitutional purposes. *Id.* However, a statement by defense counsel

that the defendant waived the right is insufficient. *Id.* In *Wicke* and *Hos*, defense counsel

6

stated that their clients waived the right to a jury trial while their clients stood silently by. *Wicke*, 91 Wn.2d at 641; *Hos*, 154 Wn. App. at 244. In both cases, the court reversed because the record did not show that the defendant had personally expressed the waiver. *Wicke*, 91 Wn.2d at 645; *Hos*, 154 Wn. App. at 252. Even if waiver was implied by the defendant's conduct, the conduct was not strong enough evidence of waiver to meet constitutional requirements. *Wicke*, 91 Wn.2d at 645.

Here, the record includes no written or oral waiver of jury trial by Mr. Fregoso-Guerrero, or even a purported waiver by his lawyer—the subject simply never came up.

The State nonetheless argues, based on *United States v. Ferreboeuf*, 632 F.2d 832 (9th Cir. 1980), that Mr. Fregoso-Guerrero signed a stipulation and, without evidence to the contrary, the trial court was free to assume that he knew about and agreed to its contents. Resp. to Appellant's Suppl. Br. at 3. First of all, the document signed by Mr. Fregoso-Guerrero said nothing about waiving his right to jury trial; the most that can be said for it is that it was prepared for signature by a judge. Secondly, *Ferreboeuf* did not raise any issue of waiving a jury trial—in fact, the defendant in *Ferreboeuf* was tried by a jury. The decision dealt instead with whether the court was required to establish that a defendant's stipulation to a *critical fact* was voluntary (it answered "no"). Since a stipulated facts trial can be presented to a judge or a jury, the mere act of stipulating to facts says nothing about jury waiver.

7

As pointed out by Mr. Fregoso-Guerrero, the record here is even less adequate than the records in *Wicke* and *Hos* to demonstrate a knowing and voluntary waiver of Mr. Fregoso-Guerrero's right to trial by jury. A new trial is required.

## II. *Should the trial court's denial of Mr. Fregoso-Guerrero's suppression motion be affirmed?*

Mr. Fregoso-Guerrero makes three related arguments challenging the trial court's denial of his motion to suppress following an unusual, and ultimately unclear, stipulation to the facts and conclusions from Mr. Retana Gonzalez's suppression hearing.

He first argues that his right to be present at all critical stages was violated. He contends this is so because evidence was presented at the Retana Gonzalez suppression hearing; Mr. Fregoso-Guerrero was not present at that hearing; and he did not voluntarily, knowingly, and intelligently waive his right to be present at that hearing.[2]

A defendant's right to be present in court is protected by the Sixth Amendment's confrontation clause and the Fourteenth Amendment's due process clause. *United States*

---

[2] He raises this argument for the first time on appeal. Generally, this court will not review issues raised for the first time on appeal. RAP 2.5(a). An exception is manifest error affecting a constitutional right. RAP 2.5(a)(3). The right to be present at one's criminal trial is a constitutional issue that may be raised for the first time on appeal. *State v. Easterling*, 157 Wn.2d 167, 173 n.2, 137 P.3d 825 (2006). While we reject the suggestion that Mr. Retana Gonzalez's suppression hearing somehow became part of the proceedings in Mr. Fregoso-Guerrero's case by virtue of the stipulation, the error as framed implicates a constitutional right and may be raised for the first time on appeal.

*v. Gagnon*, 470 U.S. 522, 526, 105 S. Ct. 1482, 84 L. Ed. 2d 486 (1985) (per curiam).[3]

The confrontation clause guarantees a criminal defendant the right to be present when

evidence is presented. *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 306, 868 P.2d 835

(1994) (quoting *Gagnon*, 470 U.S. at 526). The due process clause guarantees the right

to be present when the defendant is not actually confronting the evidence, but the

defendant's presence "'has a relation, reasonably substantial, to the fullness of his

opportunity to defend against the charge.'" *Gagnon*, 470 U.S. at 526 (quoting *Snyder v.

Massachusetts*, 291 U.S. 97, 105-06, 108, 54 S. Ct. 330, 78 L. Ed. 674 (1934), *overruled

in part on other grounds by Malloy v. Hogan*, 378 U.S. 1, 84 S. Ct. 1489, 12 L. Ed. 2d

653 (1964)).

Mr. Fregoso-Guerrero was present at the CrR 3.6 hearing on his own motion to

suppress. He personally signed the stipulated findings and conclusions, which stated that

he, his lawyer, and the State "are hereby adopting the findings and conclusions from the

hearing held on October 18, 2011, in the Enrique Retana Gonzalez matter." CP at 27.

When the signed findings and conclusions were presented to the court, it inquired:

> THE COURT: Mr. Redal, Mr. Riesen's handed up to me Findings
> of Fact, Conclusions of Law regarding a 3.6 hearing. And Mr. Riesen's
> signed. It looks like you have signed it and looks like your client has
> signed it.
> MR. REDAL: That's correct.

---

[3] This court applies federal constitutional law when addressing the right to be
present. *State v. Irby*, 170 Wn.2d 874, 880, 246 P.3d 796 (2011).

> THE COURT: Anything you want to say?
> MR. REDAL: No. We agree with those Findings and Conclusions.

RP at 2.

A stipulation to facts is an express waiver conceding for the purposes of trial that the facts are true and there is no need to prove the facts. *State v. Wolf*, 134 Wn. App. 196, 199, 139 P.3d 414 (2006) (quoting *Key Design, Inc. v. Moser*, 138 Wn.2d 875, 893-94, 983 P.2d 653 (1999)). Whether to stipulate to facts is a tactical decision and an attorney can decide whether a stipulation is appropriate. *State v. Mierz*, 127 Wn.2d 460, 476, 901 P.2d 286 (1995); *State v. Goodin*, 67 Wn. App. 623, 633, 838 P.2d 135 (1992).

Rather than draft findings from scratch, parties sometimes rely for stipulated facts on police reports or on a fair statement of facts in a party's brief. Ultimately, the State is seeking language and content sufficient to meet its burden of proof. The defendant will want the language and content to be limited to what he or she believes the State will inevitably prove. Myriad sources of language and content are conceivable. We see no reason why the findings from a hearing or a trial in a related prosecution would not be a reasonable source of language and content when parties elect to stipulate to facts.

Mr. Fregoso-Guerrero does not explain why the findings from the Retana Gonzalez suppression hearing would not be a reasonable source of language and content for a stipulation in his own hearing. Instead, he treats the fact that the parties appropriated those findings as if the *underlying hearing* thereby assumed significance in

10

his case. Neither the document that he signed nor statements made during the suppression hearing suggested he was agreeing to be bound by the record of the Retana Gonzalez hearing. We would not regard the record of that hearing as having any role in the trial court's decision on Mr. Fregoso-Guerrero's suppression motion or in this appeal. We would therefore reject this argument out of hand except for the fact, discussed below, that in connection with one of Mr. Fregoso-Guerrero's other arguments, *the State* treats the record of the Retana Gonzalez hearing as incorporated for some purposes in this appeal.

Mr. Fregoso-Guerrero next argues that evidence did not support the trial court's findings because no evidence was offered in his suppression hearing. We agree that the court should not have relied on evidence in the Retana Gonzalez hearing as support for its findings on Mr. Fregoso-Guerrero's suppression motion, but it never had to: Mr. Fregoso-Guerrero stipulated to the findings. As the United States Supreme Court observed in *Christian Legal Society v. Martinez*, ___ U.S. ___, 130 S. Ct. 2971, 177 L. Ed. 2d 838 (2010):

> Litigants, we have long recognized, "[a]re entitled to have [their] case tried upon the assumption that . . . facts, stipulated into the record, were established." *H. Hackfeld & Co. v. United States*, 197 U.S. 442, 447, 25 S. Ct. 456, 49 L. Ed. 826 (1905). This entitlement is the bookend to a party's undertaking to be bound by the factual stipulations it submits. See *post*, at 3005 (ALITO, J., dissenting) (agreeing that "the parties must be held to their Joint Stipulation"). As a leading legal reference summarizes:

> "[Factual stipulations are] binding and conclusive . . . , and
> the facts stated are not subject to subsequent variation. So,
> the parties will not be permitted to deny the truth of the facts
> stated, . . . or to maintain a contention contrary to the agreed
> statement, . . . or to suggest, on appeal, that the facts were
> other than as stipulated or that any material fact was omitted.
> The burden is on the party seeking to recover to show his or
> her right from the facts actually stated." 83 C.J.S.,
> Stipulations § 93 (2000) (footnotes omitted).

*Christian Legal Soc'y*, 130 S. Ct. at 2983 (alterations in original) (footnote omitted).

Finally, Mr. Fregoso-Guerrero argues that while there might have been reasonable

suspicion for the stop and detention of Mr. Retana Gonzalez, there was no independent

basis for seizing Mr. Fregoso-Guerrero, who merely ran away when the car stopped.

Whether the court's conclusion was correct is an issue of law that we review de novo.

*State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009).

Article I, section 7 provides that "[n]o person shall be disturbed in his private

affairs . . . without authority of law." When a car is stopped for a driving offense, the

driver, but not the passenger, has been stopped based upon probable cause. *State v.*

*Mendez*, 137 Wn.2d 208, 217-18, 970 P.2d 722 (1999), *abrogated on other grounds by*

*Brendlin v. California*, 551 U.S. 249, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007).

Stopping the car and its occupants is lawful as long as the seizure does not extend beyond

what is necessary to secure the scene or respond to exigent circumstances. *State v. Rehn*,

117 Wn. App. 142, 151, 69 P.3d 379 (2003) (quoting *State v. Byrd*, 110 Wn. App. 259,

263, 39 P.3d 1010 (2002)). An officer may exert additional control over a passenger for

12

investigative purposes only if the officer has an independent basis for doing so. *State v. Rankin*, 151 Wn.2d 689, 699, 92 P.3d 202 (2004). Whether there is a reasonable suspicion to stop someone depends on the totality of the circumstances, including the defendant's conduct, the stop's location, and the officer's training, experience, and preexisting knowledge. *State v. Villarreal*, 97 Wn. App. 636, 640, 984 P.2d 1064 (1999).

Here, the only independent basis for seizing Mr. Fregoso-Guerrero identified in the stipulated facts was that he ran away from the car after Mr. Retana Gonzalez stopped in response to Deputy Risdon activating his lights. The parties cite five cases as bearing on whether Mr. Fregoso-Guerrero's flight supported a suspicion of criminal activity on his part sufficient to support his seizure. The State cites *Villarreal*, 97 Wn. App. 636; *State v. Swaite*, 33 Wn. App. 477, 656 P.2d 520 (1982); and *United States ex rel. Richardson v. Rundle*, 461 F.2d 860 (3rd Cir. 1972). Mr. Fregoso-Guerrero cites *State v. Walker*, 66 Wn. App. 622, 834 P.2d 41 (1992), *abrogated on other grounds by State v. Randall*, 73 Wn. App. 225, 868 P.2d 207 (1994); *State v. Thompson*, 93 Wn.2d 838, 613 P.2d 525 (1980); and *State v. Larson*, 93 Wn.2d 638, 611 P.2d 771 (1980).

Turning first to the cases cited by the State, *Villarreal* does not address flight as providing reasonable suspicion; in that case, the court found that the stop was justified where an officer observed the defendant violating a city ordinance and, alternatively, defacing or damaging private property. In *Swaite*, the defendant was stopped when he was spotted in the area of a burglary that had just been reported and fit a detailed

13

description of a stranger seen immediately prior to the burglary. His attempt to evade police was relied upon as an additional basis for suspicion but only in combination with the other articulable reasons for suspecting him of the burglary.

*Richardson*, a 42-year-old decision involving defendants stopped in Philadelphia, comes closest to being helpful to the State, since a *Terry*[4] stop was found justified on the basis of four men's observed flight from a drug store. But in that case, the court found it significant that the men were seen fleeing the drug store in a "high crime district," where department policy required officers to monitor the drug store and other area businesses for possible crime and officers were "always on the lookout for robberies of business establishments." *Richardson*, 461 F.2d at 863. In affirming the validity of the stop, the court observed that deliberately furtive actions and flight at the approach of law officers are strong indicia of mens rea, "'*and when coupled with specific knowledge on the part of the officer relating the suspect to evidence of crime*, they are proper factors to be considered in the decision to make an arrest.'" *Id.* at 864 (emphasis added) (quoting *Sibron v. New York*, 392 U.S. 40, 66, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968)). In Mr. Fregoso-Guerrero's case, by contrast, one of the trial court's stipulated findings was that "[t]he area of Ohme Road is not considered to be a high crime area." CP at 30 (Finding of Fact 20).

---

[4] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

14

The three Washington decisions cited by Mr. Fregoso-Guerrero more clearly apply to these facts. In *Walker*, the court recognized that an unreliable tip could not be buttressed as the basis for a seizure by a defendant's attempt to evade police, explaining:

> The only corroborative observation made by the officer was that the defendant appeared startled when he saw the officer and attempted to evade him by turning onto a dead-end street. Flight from, or an obvious attempt to avoid police officers may be considered along with other factors in determining whether the officer possessed a reasonable suspicion of criminal activity. *State v. Little*, 116 Wn.2d 488, 806 P.2d 749 (1991); *State v. Glover*, 116 Wn.2d 509, 806 P.2d 760 (1991). *However, flight alone is not enough, see Little*, 116 Wn.2d at 504 (Utter, J., dissenting).

*Walker*, 66 Wn. App. at 629 (emphasis added).

*Thompson* is even more analogous to the facts of this case. In *Thompson*, police had an articulable basis for following a Cadillac meeting the description of a car whose occupants had been seen brandishing a gun. When officers detained the occupants of the Cadillac, it was parked next to a Chrysler in an isolated section of a mall parking lot. As officers ordered the occupants out of the Cadillac, Thompson, the owner of the Chrysler, got out of his own car and began walking hurriedly toward the mall before being ordered by officers to stop. Contraband was found on his person and in his car. The State defended the seizure on the basis of "the brandishing of a pistol, the driver of the implicated Cadillac pulling up next to petitioner's car in an isolated part of the lot, and the petitioner's 'hurried' walking away 'without even looking back.'" 93 Wn.2d at 841. Our Supreme Court held that facts supporting a reasonable suspicion of Thompson's

15

apparent associates in the Cadillac, coupled with Thompson's hasty retreat, "do not create a reasonable suspicion that petitioner was involved in criminal conduct." *Id.*

Finally, the court in *Larson* reversed the conviction of a passenger based on the fruits of a stop of the driver for a parking infraction. The court held:

> Assuming arguendo that a parking violation can be characterized as a traffic offense, as contemplated in [*Delaware v. Prouse*, 440 U.S. 648, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979)], then the police officers would have acted properly in stopping the car and questioning the driver on the ground that it had been illegally parked. However, *a stop based on a parking violation committed by the driver does not reasonably provide an officer with grounds to require identification of individuals in the car other than the driver, unless other circumstances give the police independent cause to question passengers.* To hold otherwise would restrict the Fourth Amendment rights of passengers beyond the perimeters of existing case law.

*Larson*, 93 Wn.2d at 642 (emphasis added) (footnote omitted). The driver of the car in *Larson* had also pulled away as officers approached, and the court again observed, citing *Brown v. Texas*, 443 U.S. 47, 99 S. Ct. 2637, 61 L. Ed. 2d 357 (1979), that "a suspect's leaving at the time that a police cruiser arrives does not necessarily lead to the conclusion that it is reasonable to suspect that person of a crime." *Larson*, 93 Wn.2d at 645.

The State argues that another circumstance, in addition to Mr. Fregoso-Guerrero's flight, supported the seizure—and this is where the State relies on evidence from the Retana Gonzalez suppression hearing, as Mr. Fregoso-Guerrero feared it would. The State claims that "[t]he officer felt there may have been a weapon involved" and "[t]he officer was initially going to pursue the driver, but had to run past the passenger in order

16

to get to the direction the driver went, so it was necessary for the officer to detain the passenger for officer safety purposes." Second Am. Br. of Resp't at 7. While these facts may be supported by the transcript of the Retana Gonzalez hearing, which the State filed as part of the record in this appeal, no mention of these facts was made in the findings to which Mr. Fregoso-Guerrero stipulated.[5] The transcript of the Retana Gonzalez hearing was not a part of the record in the trial court and was not stipulated to as evidence by Mr. Fregoso-Guerrero.

To further muddy the parties' intentions in resolving the suppression motion by stipulation, they stipulated to conclusions of law. Stipulations of law are not binding on a court. *See, e.g., Folsom v. County of Spokane*, 111 Wn.2d 256, 261, 759 P.2d 1196 (1988). The State appears to have concluded that by stipulating to the conclusions from the Retana Gonzalez suppression hearing, Mr. Fregoso-Guerrero either waived his right to challenge the outcome, or agreed that the outcome could be defended on the basis of evidence presented at the Retana Gonzalez hearing. It is unclear what Mr. Fregoso-Guerrero thought he was doing by stipulating to conclusions of law.

---

[5] The only mention in the findings of a weapon is in explaining why Deputy Risdon pulled his car back early in his observation of the SUV. A different passenger, in the front seat (Mr. Fregoso-Guerrero was sitting in the rear) had begun to step out of the SUV and looked back at the deputy, which "seemed suspicious," causing the deputy to back up "*in case* the male exiting the vehicle had a weapon." CP at 27 (emphasis added).

17

Given what we determine was the parties' genuine confusion about the extent and effect of their stipulation, we conclude that it is appropriate to grant Mr. Fregoso-Guerrero's request for a new hearing on his suppression motion, free of any effect of the prior stipulation.

We reverse the judgment and sentence and the order denying Mr. Fregoso-Guerrero's motion to suppress, and remand for proceedings consistent with this opinion.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, A.C.J.

WE CONCUR:

Brown, J.

Kulik, J.P.T.