**ANDREWS et al. v. ST. LOUIS JOINT STOCK LAND BANK OF ST. LOUIS, MO. et al.**

**ST. LOUIS UNION TRUST CO. et al. v. SAME.**

Nos. 12046, 12045.

Circuit Court of Appeals, Eighth Circuit.

April 27, 1942.

Rehearing Denied June 8, 1942.

Robert H. McRoberts, of St. Louis, Mo. (Thomas S. McPheeters and Bryan, Williams, Cave & McPheeters, all of St. Louis, Mo., on the brief), for St. Louis Union Trust Co., as Trustee, etc., et al.

Donald C. Dobbins and Peter P. Schaefer, both of Champaign, Ill. (Brandom Hope, of St. Louis, Mo., and William J. Dolan, of Champaign, Ill., on the brief), for Ernest E. Andrews et al.

George C. Willson, of St. Louis, Mo., and Peyton R. Evans, of Washington, D. C., for S. L. Cantley, receiver of St. Louis Joint Stock Land Bank of St. Louis.

H. M. Langworthy, of Kansas City, Mo. (Carl D. Matz and E. F. Halstead, both of Kansas City, Mo., on the brief), for A. W. Brown, amicus curiæ.

Francis R. Stout, of St. Louis, Mo., Joseph G. Gorman, of Chicago, Ill., and Donald C. Swatland and Robert D. Blasier, both of New York City, for interveners-appellees George J. Newman et al.

Before GARDNER, SANBORN, and WOODROUGH, Circuit Judges.

GARDNER, Circuit Judge.

There are here two appeals from a decree distributing the assets of the St. Louis Joint Stock Land Bank in receivership. As originally brought, this was a suit by the owners of certain bonds of the Central Illinois Joint Stock Land Bank of Greenville, Illinois, on behalf of themselves and others similarly situated, seeking a segregation of the assets transferred by the Central Illinois Joint Stock Land Bank of Greenville, Illinois, to the St. Louis Joint Stock Land Bank of St. Louis, Missouri. Appellants in No. 12,046 were plaintiffs in the suit, while the St. Louis Joint Stock Land Bank, its receiver, and the Farm Loan Commissioner of the United States were defendants. This is the second appeal to this court, the opinion on the former appeal being reported in 107 F.2d 462, where will be found a somewhat detailed recital of the history leading up to the controversy there considered. It will be conducive to clarity to make here a further statement of facts giving rise to the present controversy.

There are three joint stock land banks involved—the Central Illinois Joint Stock Land Bank of Greenville, Illinois, the St. Louis Joint Stock Land Bank of St. Louis, Missouri, and the Southeast Missouri Joint Stock Land Bank of Cape Girardeau. These will be referred to as the Greenville Bank, the St. Louis Bank, and the Cape Girardeau Bank, respectively. The St. Louis Bank acquired all the assets of the other two banks and assumed payment of their liabilities. The prior appeal involved the question of the security available for payment of the bonds issued by the Greenville Bank and the St. Louis Bank. In the decision on the prior appeal, we held that the assets of the Greenville Bank, consisting chiefly of real estate mortgages, were a separate trust for the payment of its bonds and similarly that the assets of the St. Louis Bank were a separate trust

for the payment of its bonds; that by reason of the assumption of the debts of the Greenville Bank in the contract of purchase by the St. Louis Bank, the Greenville bondholders were entitled to have their claims allowed for the full amount and to participate in the unpledged assets of the St. Louis Bank.

The contract by which the St. Louis Bank secured the assets of the Cape Girardeau Bank was dated February 20, 1925, and the transfer was consummated March 1, 1925, and the contract whereby the St. Louis Bank secured the assets of the Greenville Bank was dated November 5, 1925, and provided that the transfer be effective November 30, 1925. On June 1, 1932, the St. Louis Bank was declared insolvent and a receiver was appointed. Between November 1, 1925, and June 1, 1932, the holders of the Greenville bonds, totaling $1,352,000 in principal amount, presented them to the St. Louis Bank, with request that they be exchanged, coupon bonds for registered bonds, and vice versa, under the provisions of Sec. 20 of the Farm Loan Act, 12 U.S.C.A. § 864. As the St. Louis Bank had no new Greenville bonds to issue, and as the Greenville Bank had been liquidated, it could not obtain Greenville bonds. In these circumstances, the Farm Loan Board instructed the St. Louis Bank to issue new St. Louis bonds in exchange for the Greenville bonds surrendered, and this was done. The St. Louis Bank deposited no new or additional collateral with the registrar since it regarded all collateral on deposit with the registrar as collectively securing all bonds issued or assumed by the St. Louis Bank. Of these bonds, $993,000 were outstanding on June 1, 1932. Holders of bonds in the principal amount of $182,500 issued by the Cape Girardeau Bank surrendered them and received bonds of the St. Louis Bank, and no new or additional collateral was deposited with the registrar to secure these bonds. Of these last named bonds, $154,500 were outstanding June 1, 1932.

During the period from March 16, 1925, to June 1, 1932, the St. Louis Bank issued and sold to the public $3,375,000 in principal amount of its own bonds to secure which it deposited collateral with the registrar. Of these St. Louis Bank bonds $2,728,500 were outstanding on June 1, 1932. On November 30, 1925, the assets of the Greenville Bank consisted of farm mortgages and United States Government bonds in the amount of $8,449,550. The

amount of Greenville Bank bonds outstanding and assumed by the St. Louis Bank was $8,300,000. The St. Louis Bank at that time had $11,072,775.86 face value of farm mortgages on deposit, and $11,059,000 of bonds outstanding against them. On June 1, 1932, the Cape Girardeau Bank had outstanding $308,000 of bonds and had over $475,000, face value, of mortgages in the hands of the receiver.

The St. Louis Bank, prior to its closing, withdrew from the registrar and collected about $2,665,000 of principal, face value, of the pledged Greenville assets which were on deposit with the registrar when the contract of purchase was closed November 30, 1925. The receiver has not shown what amount of cash he collected on these withdrawn assets, but this amount is determined by deducting from the value of the original Greenville Bank assets, the sum of $5,784,550, the amount of the Greenville Bank identifiable assets on hand June 1, 1932. These funds were commingled in the current bank account of the St. Louis Bank and used by it for all purposes, including new loans taken in the name of the St. Louis Bank. There was $118,220.33 in the current bank account of the St. Louis Bank when it went into receivership.

When the receiver was appointed on June 1, 1932, he took over the assets of the Greenville Bank identifiable as mortgages of that bank which had been foreclosed and converted into judgments, certificates, farms, sale contracts, purchase money mortgages, and other forms of property resulting from foreclosure of the mortgages, of the value of approximately $1,304,105.18.

On May 11, 1940, plaintiffs below filed a motion to redocket the cause and for a rule on the receiver to make discovery. On May 14, 1940, the receiver filed a motion for further proceedings and judgment. On July 12, 1940, the St. Louis Trust Company, as trustee, was granted leave to intervene as a party defendant, and filed a motion by which it sought to have the court hold that the bonds of the St. Louis Bank which had been issued in exchange for Greenville Bank bonds and Cape Girardeau Bank bonds be deemed Greenville bonds and Cape Girardeau bonds respectively, and entitled to participate in the security of the Greenville mortgages and Cape Girardeau mortgages respectively, and not bonds of the St. Louis Bank, nor entitled to participate in the security for payment of the St. Louis bonds.

On July 2, 1940, plaintiffs filed a motion for leave to file an amended and supplemental complaint, which was denied, and the matter proceeded to hearing. The court, after hearing, filed findings of fact and conclusions of law upon which it entered decree from which these appeals are prosecuted.

The court adjudged that holders of the bonds issued by the Greenville Bank were entitled to share equally and ratably to the amount of their claims in a sum equal to the net proceeds realized and to be realized by the receiver from the morgages taken by and payable to the Greenville Bank, which were on deposit with the registrar on November 30, 1925, and which came into the hands of the receiver on June 1, 1932. Similarly, it decreed with reference to the holders of the bonds of the Cape Girardeau Bank, limiting them exactly as the Greenville bondholders were limited, to mortgages of that bank on deposit with the registrar on March 18, 1925, and which came into the hands of the receiver on June 1, 1932. As to the bonds issued by the St. Louis Joint Stock Land Bank, the court held that they were entitled to share equally and ratably to the amount of claims based thereon in a sum equal to the net proceeds realized and to be realized from the pledged assets of the St. Louis Bank, that is, all assets except those allocated to the payment of bonds of the Greenville Bank and the Cape Girardeau Bank. The court held that the bonds issued by the St. Louis Bank in exchange for bonds of the Greenville Bank and in exchange for the bonds of the Cape Girardeau Bank should be treated as St. Louis bonds. The court also held that: "All holders of bonds for which the St. Louis Joint Stock Land Bank is liable as issuer or assumptor, and all general creditors of said bank are entitled to share equally and ratably in the net proceeds realized and to be realized by the Receiver from the unpledged assets of said bank. The holders of bonds issued or assumed by said bank are entitled to participate in dividends derived from the unpledged assets on the basis of the face amount of their claims, without deduction for the value of their securities, until such dividends, plus the amounts realized from

their securities, and from the proceeds of stockholder liability suits are equal to the amount of their claims."

The appellant St. Louis Union Trust Company as trustee is the owner of bonds issued by the St. Louis Bank not in exchange for bonds originally issued by either of the other two banks. We shall consider its appeal first. It challenges only that part of the decree which holds that bonds issued by the St. Louis Bank in exchange for bonds of the Greenville Bank and the Cape Girardeau Bank are to be treated as bonds issued by the St. Louis Bank for the purpose of sharing in the net proceeds realized and to be realized by the receiver from the securities and assets securing payment of the St. Louis bonds. It contends that such bonds should be treated as issued by the banks for whose bonds they were exchanged, and hence, should participate only in the security available for the payment of such bonds. In the alternative, it contends that the holders of the St. Louis bonds should be subrogated to the rights of the holders of such exchanged bonds against securities available for payment of Greenville bonds and Cape Girardeau bonds.

As between the St. Louis Bank and those who exchanged their bonds in the other banks for bonds issued by it, the transaction left the creditor the same but substituted a new debtor. The transaction resulted in a novation. Fidelity Ins. T. & S. D. Co. v. Shenandoah Valley R. Co., 86 Va. 1, 9 S.E. 759, 19 Am.St.Rep. 858; Union Trust Co. of New York v. Illinois Midland R. Co., 117 U.S. 434, 6 S.Ct. 809, 29 L.Ed. 963; New York Security & Trust Co. v. Louisville, E. & St. L. Consol. R. Co., C.C., 102 F. 382; Rensselaer & S. R. Co. v. Irwin, 2 Cir., 249 F. 726; Restatement, Law of Contracts, Vol. 2, Sec. 428. Title 12 U. S.C.A. § 871 provides: "Each land bank shall be bound in all respects by the acts of its officers in signing and issuing farm loan bonds and by the acts of the Farm Credit Administration in authorizing their issue." This statutory provision has been on the books since 1916. Act of July 17, 1916, c. 245, Sec. 21, 39 Stat. 377. It vested in the St. Louis Bank the power to issue the bonds in exchange for bonds of the other banks and to make the purchasers creditors of the St. Louis Bank on an equal footing with its other bond creditors. The St. Louis bondholders, as well as other creditors, had to take a certain risk as to the

judgment and ability of management. Resulting insolvency of necessity causes losses. Neither the trial court nor this court can correct the error, if any, of the officers of the St. Louis Bank in not depositing collateral sufficient to meet the added obligations, unless, as urged by the St. Louis Union Trust Company, the remedy of subrogation is available to the St. Louis Bank for the benefit of its bondholders to the extent that they have absorbed a liability that otherwise would have rested with the Greenville bondholders. At the outset, all of these institutions were solvent. The St. Louis Bank could not make wrongdoers of the bondholders by failing to allocate and segregate securities as it went along. There is no wrong on the part of the bondholders; neither was there such a mistake as would give rise to a right of restitution in an action for money had and received. Third National Bank of St. Louis v. Rice, 8 Cir., 161 F. 822, 23 L.R.A., N.S., 1167, 15 Ann.Cas. 450; Morris v. Tarin, 1 U.S. 147, 1 L.Ed. 76, 1 Am.Dec. 233. The doctrine of restitution invoked is not applicable, but if any remedy is to be given St. Louis bondholders, it must be in the nature of subrogation. This doctrine is applicable when one has been compelled to pay a debt which ought to have been paid by another. American Surety Co. v. Bethlehem National Bank, 314 U.S. 314, 62 S.Ct. 226, 86 L.Ed.——, opinion filed December 8, 1941. Subrogation might inure to the benefit of the St. Louis bondholders had they discharged the liability to the holders of exchanged bonds, but they have not done this. The doctrine has been expanded to include those situations in which one person not acting voluntarily pays a debt for which another is primarily liable and which in equity and good conscience should have been discharged by the latter. New York Casualty Co. v. Sinclair Refining Co., 10 Cir., 108 F.2d 65. A voluntary lender is never subrogated. Town of River Junction v. Maryland Casualty Co., 5 Cir., 110 F.2d 278, 134 A.L.R. 724. Subrogation can arise only where the creditor through whose original claim the right of subrogation arises has been paid in full. Standard Surety & Casualty Co. of New York v. Standard Accident Ins. Co., 8 Cir., 104 F.2d 492; Borserine v. Maryland Casualty Co., 8 Cir., 112 F.2d 409; Southern Surety Co. v. Braley, 8 Cir., 64 F.2d 893. If and when the bonds issued in exchange are paid in full, then all St. Louis bonds will likewise

have been paid and there will be no necessity for invoking the doctrine of subrogation.

We shall next consider the appeal of plaintiffs, owners of Greenville bonds. They contend that (1) the St. Louis Bank collected $2,665,000 of assets of the Greenville Bank, and wrongfully commingled these proceeds with the assets of the St. Louis Bank, and plaintiffs have a prior lien on this commingled fund to the extent of augmentation; (2) the Greenville bondholders are entitled to have in the Greenville trust the Greenville mortgages turned over to the receiver in converted form; (3) plaintiffs should have been granted the right to amend their complaint and file supplemental complaint in the District Court, and to a discovery.

■ The trial court found that "At the trial of this case, plaintiffs stated that because of the accounting difficulties which otherwise would be involved, they waived all claim to the proceeds of Greenville mortgages, thus liquidated in whole or in part by the St. Louis Bank, and limited their claim to the Greenville mortgages which were on deposit with the Registrar November 30, 1925, and which came into the hands of the Receiver June 1, 1932, and to the proceeds of such Greenville mortgages as came into the hands of the Receiver and were liquidated in whole or in part by him." A judicial admission is conclusive upon the party by whom made, and stipulations of counsel may have the effect of eliminating from the trial of a cause issues that otherwise might be presented. Wiget v. Becker, 8 Cir., 84 F.2d 706; Cupples Co. Mfgrs. v. N.L.R.B., 8 Cir. 106 F.2d 100; Coty, Inc., v. Prestonettes, Inc., 2 Cir., 3 F.2d 984; Arkansas Valley Sugar Beet & Irrigated Land Co. v. Ft. Lyon Canal Co., 8 Cir., 173 F. 601, 603. In the last cited case, it is said: "A stipulation to settle controversies, or to assist a court in deciding them, ought not to be discouraged by a narrow and unreasonable construction, that would defeat the manifest intention of one of the parties, acceded to by the other."

■ An examination of the record conclusively shows that this finding of the trial court is sustained by the evidence. Not only was the waiver distinctly made in the trial court, but it was reiterated in the briefs of counsel on the first appeal and repeated in the brief on rehearing. The course of decision was affected by this waiver. Atlantic Brewing Co. v. William J. Brennan Grocery Co., 8 Cir., 79 F.2d 45.

This disposes of plaintiffs' claim of a prior lien on the commingled fund. They have not been relieved from the effect of the waiver voluntarily made by them.

■ There remains for consideration the contention that the trial court improperly restricted the Greenville bondholders to a lien on the Greenville bank mortgages and in not permitting them to have a lien on all such mortgages which came into the hands of the receiver or are now in his hands in converted form, such as certificates of sale, judgments, real estate titles, and other property acquired by foreclosure and which are identifiable as the Greenville bank mortgages in converted form. It was the view of the trial court that our decision on the prior appeal limited the lien of the Greenville bondholders to the pledged mortgages, and hence, it denied the right to a lien on these securities unless they still had the technical form of mortgages. We announced the principle to govern in the disposition of the assets, and those assets had been generally referred to as mortgages. While it is true that we used the phrase "pledged mortgages," there is nothing in the decision indicating that we intended to depart from or modify the declared principle that these Greenville bondholders were entitled to the specific security pledged to secure their bonds, even though that security may have been converted into some other form. In the course of the opinion we said: "Plaintiffs were entitled to such of the mortgages of the Greenville Bank as went into the hands of the receiver upon insolvency, thereby augmenting the volume and value of the estate. They are entitled to have the mortgages still in the hands of the receiver, that can be identified as Greenville mortgages, liquidated, and the proceeds applied to their claims, and they are entitled to have applied to their claims the proceeds already received by the receiver from the liquidation of Greenville mortgages which came into his hands." [107 F.2d 470.]

These certificates of sale and other forms into which the mortgages may have been converted, are still a part of the property pledged, or they are "the proceeds already received by the receiver." In our decision we had no thought of departing from the principle announced by the Supreme Court in United States v. Dunn, 268 U.S. 121, 45 S.Ct. 451, 454, 69 L.Ed. 876, where,

quoting with approval from Pennell v. Deffell, 4 DeGex, M. & G. 372, it is said: " 'It is an undoubted principle of this court that as between a cestui qui trust and trustee and all parties claiming under the trustee, otherwise than by purchase for valuable consideration without notice, all property belonging to a trust, however much it may be changed or altered in its nature or character, and all the fruits of such property, whether it is in its original or its altered state, continues to be subject to or affected by the trust.' "

The trial court was, we think, misled by some of the language employed by us in the former decision, and followed that language rather than the underlying principle there announced. Laboring under this misapprehension as to our decision, the court unduly limited the scope of the lien to which the Greenville bondholders **and** the Cape Girardeau bondholders were entitled.

██ ██ The St. Louis bondholders were not, as against the Greenville bondholders and the Cape Girardeau bondholders bona fide purchasers for value. The St. Louis Bank issued no new bonds after 1937 and the St. Louis bondholders' rights to the securities were equitable. The doctrine of bona fide purchaser for value does not apply to equitable rights. Scott on Trusts, pp. 1580-1592; 4 Bogert on Trusts and Trustees, § 885.

The court made no finding covering the amount of the mortgages coming into the hands of the receiver which are now in his hands in converted form, such as certificates of sale, judgments, real estate titles, and other property acquired by foreclosure of the Greenville mortgages which are identifiable as the Greenville Bank mortgages in converted form. The Cantley Exhibit No. 2, Record 162, shows face value of Greenville mortgages as of June 1, 1932, to be $4,480,895.56. The report of the receiver, appearing at Record 135, discloses the following:

| | |
|---|---|
| Mortgages and sales contracts on Illinois and Indiana properties | $ 209,003.99 |
| Illinois and Indiana Real Estate | 511,743.84 |
| Judgments and certificates subject to redemption (Greenville mortgages) | 659,666.77 |
| Total | $1,380,414.60 |

Neither the St. Louis nor Cape Girardeau Banks made any loans in Illinois or Indiana, except as Greenville replacements, and hence, these items are identifiable as Greenville assets. From the total should be taken $76,309.42, variance between June 1 and June 30, 1932, in mortgages on hand, presumably in foreclosure judgments. This, according to our calculation, would leave a net amount of $1,304,105.18 in assets identifiable as Greenville Bank mortgages in converted form, which assets should be added to the amount of original Greenville Bank mortgages in order to make up the total assets the net proceeds of which would be applicable to the payment of the Greenville Bank bonds. We have assumed the correctness of the figures upon which our calculations are based, but, to avoid the possibility of error, the lower court is directed to enter a finding, based upon the present record, determining the exact amount of assets which are identifiable as Greenville Bank mortgages in converted form. When this finding has been made and entered, the lower court will modify its decree in accordance with the finding and in conformity with this opinion.

On the appeal of the St. Louis Trust Company, as trustee, et al., No. 12,045, the part of the judgment and decree appealed from is affirmed. On the appeal of Ernest E. Andrews, et al., No. 12,046, the part of the decree and judgment appealed from, when modified as directed in this opinion, will stand affirmed.