Al BURSTEIN and Violet R. Burstein, Co-partners doing business as Braeburn Company, Appellants,

v.

UNITED STATES of America, Appellee.

No. 15423.

United States Court of Appeals Eighth Circuit.

April 19, 1956.

Solbert M. Wasserstrom, Kansas City, Mo., for appellants.

Horace Warren Kimbrell, Asst. U. S. Atty., Kansas City, Mo. (Edward L. Scheufler, U. S. Atty., and Paul R. Shy, Asst. U. S. Atty., Kansas City, Mo., were on the brief), for appellee.

Before WOODROUGH and VAN OOSTERHOUT, Circuit Judges, and HULEN, District Judge.

VAN OOSTERHOUT, Circuit Judge.

The question raised by this appeal is the adequacy of damages allowed appellants, plaintiffs below and hereinafter so referred to. Plaintiffs contracted to furnish the Army 144,000 Cooks trousers at $1.89 per pair. Plaintiffs' action is based upon their claim that the appellee, United States of America, defendant below, had breached its contract by requiring plaintiffs to produce and deliver a disproportionate quantity of larger sizes. Plaintiffs contended that a tariff of sizes, specifying the number of small, medium, large, and extra-large garments to be furnished for each unit of 1,000 garments, was a part of the contract. The trial court agreed, stating, "that the parties intended that performance be made according to the tariff of sizes; that the action of the Army in ordering disproportionate numbers of size large trousers was a material variation from the terms of the contract and constituted a breach for which plaintiffs are entitled to recovery in damages." No appeal is taken by the defendant. Consequently, the trial court's determination that the performance was to be in accordance with the tariff of sizes is not involved in this appeal. The trial court had jurisdiction over this case pursuant to 28 U.S.C. § 1346(a) (2).

Plaintiffs here limit their claim for damages to the cost of the extra cloth required by the disproportionate number of large size garments ordered and furnished. At the trial the parties entered into a stipulation that plaintiffs used 423,167 yards of cloth to produce the sizes ordered, and that if the plaintiffs

had been given a distribution of sizes in accordance with the tariff of sizes they would have used 401,891.46 yards of cloth. Under the contract the plaintiffs were to furnish the cloth, and it is agreed the actual cost of the cloth was $.4081 per yard. The material portions of the stipulation are set out in a footnote.[1] The distribution of sizes pursuant to the tariff of sizes and as ordered is also set out in a footnote.[2]

The trial court accepted the stipulated figure of 423,167 yards as the amount of cloth required to produce the garments ordered. However, the court rejected the stipulated figure of 401,891.46, as the number of yards that would have been required if the Government had adhered to the tariff of sizes in placing its order. In justification for so doing the trial court states:

"* * * The plaintiffs have advanced two theories of damages which are based upon their own cost figures. To use those figures would again throw the measure of damages into the realm of speculation since they are calculated to provide the maximum profit to the plaintiffs upon their contract."

The court then determines that the measure of damage is the excess cloth used by plaintiffs over the yardage of cloth which the Government would have allowed, had it supplied the cloth, to manufacture the garments upon the basis of the tariff of sizes. The court then finds that to produce the garments under the tariff of sizes on the basis of the Government allowance would require 419,992.72 yards and subtracts this figure from the agreed amount of cloth actually used, arriving at a difference of 3,244.28 yards of cloth, which at the agreed price of $.4081, makes a total of $1,323.99, for which amount the trial court entered judgment.

The errors upon which plaintiffs rely for reversal may be summarized:

(1) The trial court applied an improper measure of damages, the proper measure being the cost of the additional cloth required because of the Government's deviation from the tariff of sizes.

(2) The amount of additional cloth required and its cost are fully covered by the stipulation of the parties, and the parties and the court are bound by the stipulation.

1. "Come now the parties hereto, by their respective attorneys and stipulate and agree that the following facts, matters and attached exhibits are true and shall be deemed established as evidence in this case * * *.
   "16. Under their said contract with the defendant, plaintiffs were required to furnish their own cloth. The actual average invoice price to plaintiffs of said cloth was $.4081 per yard.
   "17. The amount of cloth used by plaintiffs per garment in each size category, based on factory experience, and the comparative government cloth allowance per garment, are as follows:

| Size | Plaintiffs Usage | Government Allowance |
|---|---|---|
| Small | 2.67 yards | 2.82 yards |
| Medium | 2.81 yards | 2.96 yards |
| Large | 2.95 yards | 3.11 yards |
| Extra Large | 3.08 yards | |

"18. In order to produce the distribution of sizes directed by defendant under

Contract QM–9678, plaintiffs used 423,167 yards of cloth. Plaintiffs' actual cost for cloth on said contract was $172,705.86.
   "19. If plaintiffs had been given the distribution of sizes in accordance with the tariff for distribution of sizes referred to in answer to Interrogatory No. 11b, plaintiffs would have used 401,891.46 yards of cloth."

2. Distribution under tariff of sizes:

| | |
|---|---|
| Small | 65,952 |
| Medium | 58,608 |
| Large | 16,992 |
| Extra-Large | 2,448 |
| Total | 144,000 |

Distribution as ordered:

| | |
|---|---|
| Small | 26,460 |
| Medium | 56,980 |
| Large | 60,560 |
| Total | 144,000 |

The errors urged will be considered in the order stated.

■ At 91 C.J.S., United States, § 101e, page 240, it is stated:

"Damages for breach of contract with the government must be proved with reasonable certainty, and the prima facie measure of such damages is the amount of loss which the injured party has sustained."

The rule for damages for breach of contract is discussed in United States v. Behan, 110 U.S. 338, 344, 345, 4 S.Ct. 81, 83, 28 L.Ed. 168, where the Court states in part:

"The *prima facie* measure of damages for the breach of a contract is the amount of the loss which the injured party has sustained thereby. * * *

" * * * As before stated, the primary measure of damages is the amount of the party's loss; and this loss, as we have seen, may consist of two heads or classes of damage— actual outlay and anticipated profits. But failure to prove profits will not prevent the party from recovering his losses for actual outlay and expenditure. * * * "

In Miller v. Robertson, 266 U.S. 243, 257, 45 S.Ct. 73, 78, 69 L.Ed. 265, the Supreme Court states:

" * * * One who fails to perform his contract is justly bound to make good all damages that accrue naturally from the breach; and the other party is entitled to be put in as good a position pecuniarily as he would have been by performance of the contract. * * * "

To the same general effect see 15 Am. Jur., Damages, § 43, p. 442; Restatement of Contracts, § 329.

■ Under the standards hereinabove set out, the trial court erred in determining that the measure of damages is the excess of cloth used over what the Government would have allowed had it supplied the cloth upon the basis of the tariff of sizes. The Government did not supply the cloth and was not required to do so under the contract. The Government orders for the garments did not conform to the tariff of sizes. Consequently we can see no reasonable basis for the use of the Government allowance based on tariff of sizes in computing the amount of additional cloth needed to manufacture the garments ordered. If any Government cloth allowance were to be used, it would be more reasonable to apply such allowance on the basis of the sizes actually ordered. If such standard were applied to determine the amount of cloth required to make the garments ordered, plaintiffs' damages would total up to considerably more than the plaintiffs are asking. This is because the amount of cloth actually used is on the basis of plaintiffs' experience. It is apparent from the tables set out in the stipulation, footnote 1, that plaintiffs' experience has developed that they could make the garments of the various sizes with somewhat less cloth than the Government allowed for the manufacture of such garments. We believe that the same measuring standard should be used in computing the amount of cloth to be used if the tariff of sizes is observed as is used in computing the cloth required to furnish the sizes ordered. For this purpose, except for the stipulation hereinafter considered, either the Government allowance table or the plaintiffs' usage table should be consistently used in making all the computations.

■■ We shall now consider the effect of the stipulation. 83 C.J.S., Stipulations, § 12, p. 30, states:

"Stipulations are the equivalent of proof and prevent an independent examination by a judicial officer or body with respect to the matters stipulated."

Valid stipulations are controlling and conclusive, and courts are bound to enforce such stipulations. Ordinarily courts have no power to make findings contrary to the terms of a stipulation. H. Hackfeld & Co. v. United States, 197 U.S. 442, 447, 25 S.Ct. 456, 49 L.Ed. 826; United States v. Kahriger, 3 Cir.,

210 F.2d 565, 571; Andrews v. St. Louis Joint Stock Land Bank, 8 Cir., 127 F.2d 799, 804; 83 C.J.S., Stipulations, § 17, p. 37, § 24, p. 57; 50 Am.Jur., Stipulations, § 17, p. 617.

In Andrews v. St. Louis Joint Stock Land Bank, supra, this court quotes with approval from Arkansas Valley Sugar Beet & Irrigated Land Co. v. Ft. Lyon Canal Co., 8 Cir., 173 F. 601, 603, as follows, 127 F.2d at page 804:

"'A stipulation to settle controversies, or to assist a court in deciding them, ought not to be discouraged by a narrow and unreasonable construction, that would defeat the manifest intention of one of the parties, acceded to by the other.'"

It is apparent from a reading of the stipulation set out in footnote 1, supra, that the parties were deliberately and intentionally stipulating upon all the material facts pertaining to damages. The parties, by their stipulation which is plain and unambiguous, agree that (1) production of garments as ordered required 423,167 yards of cloth, and (2) if the order had conformed to the tariff of sizes, 401,891.46 yards of cloth would have been required. By subtracting 401,891.46 from 423,167, we get a difference of 21,275.54 yards. By multiplying the agreed excess yardage required, because of the disproportionate quantity of larger garments ordered, by the stipulated cost of $.4081 per yard, we obtain a result of $8,682.55 to which amount plaintiffs claim they are entitled. This result is based entirely on the stipulated facts.

■ Stipulations fairly entered into are favored. They often expedite a trial and eliminate the necessity of much tedious proof. Here, much varying and conflicting proof could have been offered by many witnesses on both sides as to the amount of cloth required to produce each size of garment. The purpose of the stipulation no doubt was to eliminate such time-consuming proof. The parties by their stipulation agreed upon all the essential facts necessary to determine the amount of damage. Neither party, either in its brief or upon oral argument, explained exactly how it arrived at the stipulated yardage. We have made some computations and do not arrive at exactly the stipulated figures, although we come close to the 401,891.46 figure when we compute the yardage on the basis of the tariff of sizes and the plaintiffs' usage. It is unnecessary for us, however, to verify the yardage stipulated. Such yardages were agreed upon by the parties. The purpose of the stipulation is to dispense with the proof of stipulated facts. Stipulations are often the result of compromise. Neither in the court below nor here did the Government challenge the verity of the stipulation. No attempt has been made to show that the plaintiffs' construction of the stipulation is incorrect, nor have any steps been taken by the Government to repudiate the stipulation for fraud, mistake, or any other reason.

■ The Government argues that the purpose of the stipulation was merely to agree that plaintiffs' accountant would have testified to the stipulated facts. The stipulation does not so state either expressly or by fair implication. Instead, it is stated therein that "The following facts * * * shall be deemed established as evidence in this case." This is a strong and clear statement of intention, and no reason is disclosed by the record why the stipulated facts should not be given full consideration.

The Government cites In re Milburne, 2 Cir., 77 F.2d 310, and Platt v. United States, 10 Cir., 163 F.2d 165, as authority for its contention that the parties may not stipulate findings upon which conclusions of law are to be based. The factual situations in the cited cases differ materially from those of the case now under consideration. In the Milburne case the court held that the United States Attorney was not bound by a statement made at the trial, since repudiated, to the effect that the legality of the search was to be determined by federal law. In the Platt case the court expressed doubt whether the statement

could be construed as a stipulation. The court then states at page 168:

> "Parties may by stipulation establish evidentiary facts to obviate the necessity of offering proof, but based thereon the court must itself find the ultimate facts upon which the conclusions of law and judgment are based."

In H. Hackfeld & Co. v. United States, supra, defendant was found guilty of neglecting to return to their home country certain immigrants in its charge unlawfully in the United States. The United States Attorney stipulated that the escape of the immigrants could not have been reasonably anticipated by the defendant and did not occur by reason of any negligence on the part of the defendant. The court of appeals affirmed the conviction, holding that the stipulation was a mere conclusion and not binding on the court. In reversing the Supreme Court states 197 U.S. at pages 446, 447, 25 S.Ct. at page 457:

> " * * * It may be conceded that where the facts are all stated the court cannot be concluded by a stipulation of the parties as to the legal conclusions to be drawn therefrom, but we know no rule of public policy which will prevent the United States attorney from stipulating with the defendant in a case of this character as to the ultimate facts in the controversy. * * *

> "We think the parties were entitled to have this case tried upon the assumption that these ultimate facts, stipulated into the record, were established, no less than the specific facts recited."

■ In any event, we deem the stipulation before us here to be a stipulation of facts and not the stipulation of a legal conclusion to be drawn from the facts. The trial court is bound by the facts established by the stipulation. Moreover, in this case we do not believe that there is any substantial evidence which conflicts with the stipulated facts.

■■ There is no merit to the Government's claim that damage based on the stipulated facts is speculative and gives plaintiffs an unreasonable profit. The amount due because of the extra cloth required by the Government's deviation from the tariff of sizes can be established with exactness from the facts agreed upon, as hereinabove demonstrated. No increase in profits will accrue to the plaintiffs by the recovery of the actual cost of the excess cloth required because of the deviation in the order. Presumably, plaintiffs, in making their bid on the basis of the tariff of sizes, contemplated making a profit upon such a contract. The contract was legally entered into, and plaintiffs were entitled to the benefit of their contract. If plaintiffs could manufacture the garments originally contracted for with less cloth than specified in the Government allowance table, they are entitled to the benefit of such saving and the profit that could be derived thereby. The Government in breaching the contract by ordering larger sizes can not deprive the plaintiffs of the profit that they are entitled to upon the basis of the original contract based on the tariff of sizes.

It seems clear to us that the plaintiffs are entitled to compensation for the cost of the extra cloth required by reason of the Government's deviation from the tariff of sizes. Such an allowance will do no more than compensate the plaintiffs for the injury suffered by the Government's breach of contract, and can in no way add any additional element of profit. In fact, the evidence shows that plaintiffs' profit on the contract will be diminished. It is undisputed in the record that the larger garments, in addition to requiring extra cloth, also require more labor in cutting and sewing, more thread, and more buttons, and no compensation is claimed or allowed for such items. Upon the basis of the stipulated record here, plaintiffs are entitled to recover damages in the amount of $8,682.55.

The judgment of the District Court is reversed, and this case is remanded to the District Court with directions to enter judgment for the plaintiffs in the sum of $8,682.55, interest thereon to commence as of the date of the original judgment.