Ollie JACKSON, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 17027.

United States Court of Appeals
Eighth Circuit.

April 23, 1964.

Lawrence J. Lee, St. Louis, Mo., Bernard J. Mellman, St. Louis, Mo., on the brief, for appellant.

William C. Martin, Asst. U. S. Atty., St. Louis, Mo., Richard D. FitzGibbon, Jr., U. S. Atty., on the brief, for appellee.

Before VOGEL, MATTHES and BLACKMUN, Circuit Judges.

VOGEL, Circuit Judge.

Ollie Jackson was charged in a two-count information with selling narcotics in violation of 26 U.S.C.A. § 4705(a), and receiving and concealing narcotics in violation of 21 U.S.C.A. § 174. A jury found him guilty on both counts. He was sentenced to a ten-year term on each of the two counts, such ten-year terms to be served concurrently and not consecutively. In his appeal here Jackson claims (1) that there was insufficient evidence to show that the transferred substance involved was heroin or any other narcotic and, accordingly, the evidence is insufficient to sustain his conviction; (2) the evidence was insufficient to show that he knew the substance transferred was a narcotic; and (3) that the District Court erred in certain of its instructions.[1]

---

1. Jackson's appeal was, on motion of the government, first docketed and then dismissed for failure to prosecute. Jackson v. United States, 8 Cir., 1962, 299 F.2d 939. Thereafter appellant moved to have the dismissal vacated and the appeal reinstated on the ground that he, through ignorance and the failure of his then trial counsel to advise him, had been unfairly deprived of the opportunity to seek a review of his conviction. After appointing counsel for the appellant and considering his motion, this court vacated the order of dismissal, recalled its man-

The facts are fairly typical of most narcotics prosecutions. The testimony indicated that an informer for the Narcotics Bureau, one Robert Hawthorne, arranged to meet appellant at the informer's apartment at 786a North Euclid in the City of St. Louis, Missouri, at about 1:15 a. m. on Saturday, July 29, 1961. Prior to appellant's arrival, the informer was searched for narcotics and supplied with $125 in cash. The meeting between appellant and the informer took place in the kitchen, and was observed by various agents of the Narcotics Bureau and officers of the City of St. Louis. Appellant removed a bottle from his pocket and handed it to the informer, receiving in return the $125. The informer removed 50 gelatin capsules from the bottle, wrapped them in a piece of tinfoil, and returned the empty bottle to appellant. After appellant left the apartment the officers came out from their places of concealment and searched the informer. He gave Demorest, an agent of the Federal Bureau of Narcotics, the "stuff" received from appellant and Demorest wrapped it in a piece of a paper bag which was received into evidence at the trial as Plaintiff's Exhibit 3 and will be so referred to hereafter.

Later that same morning Agent Demorest placed Exhibit 3 and its contents in a locked box in the Federal Building in St. Louis. On the morning of Monday, July 31, 1961, Demorest "weighed that evidence, prepared a lock seal envelope, placed it therein and mailed it by registered mail to the United States Chemist at Omaha, Nebraska."

The chemist to whom Exhibit 3 and its contents were sent did not testify at the trial. However, it was stipulated that if the chemist appeared he would testify that he received "certain exhibits" from the Office of the Bureau of Narcotics in St. Louis; that he analyzed the substances contained therein and found them to be heroin; and that the exhibits brought into the courtroom by agents of the Narcotics Bureau were the ones received and analyzed by him in Omaha, Nebraska. Such stipulation was admitted into evidence without objection. At the trial, appellant took the stand and denied being at the informer's apartment on the date and time in question.

■ Appellant's first point on appeal is an assertion that the evidence adduced at the trial failed to prove that the substance allegedly transferred was heroin or any other narcotic, and accordingly that the evidence is insufficient. Upon careful examination of the entire transcript, we are convinced that this claim cannot be sustained. Appellant raises several speculative questions as to what may possibly have happened to the contents of Exhibit 3 during the period of time between when they were taken from the informer and their eventual admission into evidence. However, the undisputed testimony of Agent Demorest was that after he acquired the exhibit from the informer, he retained custody of it in a locked container until he mailed it in a lock seal envelope to the chemist, who subsequently returned it after performing an analysis of the substances contained therein. Demorest's testimony was supported by that of the informer, Hawthorne, who testified that he purchased 50 capsules of heroin from the appellant and identified the contents of Exhibit 3 as having been obtained from appellant. The witness Kenneth Nieters, a detective in the St. Louis Police Department, identified Exhibit 3 and its contents as being the substance he observed appellant pass to the informer.

■ Appellant argues that the stipulation, entered into the record as Plaintiff's Exhibit 4, was insufficient to prove that the substance allegedly obtained from him was a narcotic. The stipulation, as noted above, was that he, the government chemist, " * * * received certain exhibits from the Office of the Bureau of

---

date and reinstated the appeal. While the trial court certified that the appeal was "without merit, frivolous and is not taken in good faith", we have considered the case here on its merits.

Narcotics in St. Louis, Missouri, that he analyzed the substances contained therein and found them to be heroin, a narcotic drug, and that the exhibits brought into the courtroom during the trial of this case by agents of the Bureau of Narcotics, are the ones received and analyzed by him in Omaha, Nebraska." It should be noted that the stipulation further provided that it " * * * may be accepted by the Court in lieu of the appearance and testimony of the United States Chemist." We think the attack on the stipulation as insufficient evidence must also fail. It is a well-settled general rule of law that facts which are stipulated during the course of a trial are to be taken by the jury as conclusively proven. This court, speaking through Judge Van Oosterhout, said in Burstein v. United States, 8 Cir., 1956, 232 F.2d 19, 22:

" * * * 83 C.J.S., Stipulations, § 12, p. 30, states:

" 'Stipulations are the equivalent of proof and prevent an independent examination by a judicial officer or body with respect to the matters stipulated.'

"Valid stipulations are controlling and conclusive, and courts are bound to enforce such stipulations. Ordinarily courts have no power to make findings contrary to the terms of a stipulation." (Citing authorities.)

And see, Chicago & N. W. Ry. Co. v. Froehling Supply Co., 7 Cir., 1950, 179 F.2d 133, 135; Andrews v. St. Louis Joint Stock Land Bank, 8 Cir., 1942, 127 F.2d 799, 804.

We think the chain of evidence, beginning with the purchase by Hawthorne of the contents of Exhibit 3 from Jackson, its being in the custody of Demorest, his mailing it by registered mail to the United States Chemist at Omaha, Nebraska, the receipt of "certain exhibits" there from the Bureau of Narcotics in St. Louis, Missouri, the analysis thereof and determination that they contained heroin, a narcotic drug, and "that the exhibits brought into the courtroom during the trial of this case by agents of the Bureau

of Narcotics, are the ones received and analyzed by him in Omaha", was sufficiently linked together to justify the jury in finding that the contents of Exhibit 3 were what Jackson sold to Hawthorne on July 29, 1961, at 1:15 a. m. in Hawthorne's apartment in St. Louis, Missouri, and what Agent Demorest sent to Omaha for analysis.

Appellant further contends that the evidence is insufficient to show that he *knowingly* possessed and transferred a narcotic. Knowledge and intent, because of their nature, must largely be proved by circumstantial evidence. Here the circumstances as to the time and place of the transaction, the manner in which it was conducted and the price paid for the substance are all matters from which the jury could, and apparently did, properly infer that the appellant knew the nature of the contents of the capsules. The record shows that appellant entered the apartment where the sale was made between 1:15 a. m. and 1:27 a. m. The transaction took place in the kitchen and only two persons other than the concealed witnesses were present. The capsules were brought by the appellant to the premises in a vial which he wanted returned to him. The capsules, containing a white powder and 50 in number, were counted on the table in the appellant's presence. The price of the 50 capsules was $125.

Immediately after the transaction was completed, the appellant departed the premises. At the trial, the court carefully instructed the jury on circumstantial evidence and appellant here concedes the correctness of that instruction. We think that all of the above circumstances were sufficient to justify the jury's conclusion that appellant knew the contents of what he sold.

Appellant's final point on appeal is a contention that the trial court erred in giving the following instruction:

"Now, under the law as provided for the offense charged in Count II of the indictment, the law provides that when on trial for receiving and

concealing and facilitating the concealment of a narcotic drug, the defendant is shown to have had possession of such drug, such possession shall be deemed sufficient evidence to authorize the conviction of the defendant, unless the defendant explains his possession to your satisfaction. By explaining that possession to your satisfaction, as used in the Statute, is meant that if the defendant had possession of the narcotic drug he will have to explain that it came to him legally, and without that explanation you would be authorized to find the defendant guilty as to Count II of the indictment."

Appellant argues that the instruction is erroneous because it calls upon him to produce evidence, and improperly shifted to him the burden of proving himself free from guilt. The court's instruction was based upon 21 U.S.C.A. § 174 which provides, inter alia, as follows:

"Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

In Yee Hem v. United States, 1925, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904, the Supreme Court dealt with a statutory presumption identical, for all practical purposes, with that considered here and an instruction based upon that statute. In holding that the presumptions thus created are reasonable and do not contravene the due process of law and the compulsory self-incrimination clauses of the Fifth Amendment, the Supreme Court said at page 182 of 268 U.S., at page 471 of 45 S.Ct., 69 L.Ed. 904:

"The plaintiff in error, at the time of his arrest in August, 1923, was found in possession of and concealing a quantity of smoking opium. The lower court overruled a motion for an instructed verdict of not guil-

ty, and, after stating the foregoing statutory presumptions, charged the jury in substance that the burden of proof was on the accused to rebut such presumptions; and that it devolved upon him to explain that he was rightfully in possession of the smoking opium—'at least explain it to the satisfaction of the jury.'"

The court concluded its affirmance of the conviction by stating at page 185 of 268 U.S., at page 472 of 45 S.Ct., 69 L.Ed. 904:

"The point that the practical effect of the statute creating the presumption is to compel the accused person to be a witness against himself may be put aside with slight discussion. The statute compels nothing. It does no more than to make possession of the prohibited article *prima facie* evidence of guilt. It leaves the accused entirely free to testify or not as he chooses. If the accused happens to be the only repository of the facts necessary to negative the presumption arising from his possession, that is a misfortune which the statute under review does not create but which is inherent in the case. The same situation might present itself if there were no statutory presumption and a *prima facie* case of concealment with knowledge of unlawful importation were made by the evidence. The necessity of an explanation by the accused would be quite as compelling in that case as in this; but the constraint upon him to give testimony would arise there, as it arises here, simply from the force of circumstances and not from any form of compulsion forbidden by the Constitution."

The Yee Hem case was cited with approval by the Supreme Court in Holland v. United States, 1954, 348 U.S. 121, 139, 75 S.Ct. 127, 99 L.Ed. 150, and Tot v. United States, 1943, 319 U.S. 463, 471, 63 S.Ct. 1241, 87 L.Ed. 1519. In Tot, supra, the facts upon which the Supreme Court reversed a conviction were clearly distinguishable from those of Yee Hem and

the court so stated at page 470 of 319 U.S., at page 1246 of 63 S.Ct., 87 L.Ed. 1519. See also Harris v. United States, 8 Cir., 1957, 248 F.2d 196, 199–200. It should be noted that prior to giving its instruction on the statutory presumption, the trial court here carefully charged the jury on intent, burden of proof and the presumption of innocence. Here, too, in the words of Mr. Justice Sutherland in Yee Hem, supra, appellant's argument on this point "may be put aside with slight discussion."

An examination of the entire record discloses sufficient evidence to sustain appellant's conviction; and, finding no error in the instructions, we affirm the judgment. In doing so, however, we express appreciation to court-appointed counsel for able assistance to appellant and to this court.